ACCEPTED
07150029CV
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
2/17/2015 5:30:49 PM
Vivian Long, Clerk

## CAUSE NO. 07-15-00029-CV

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
2/17/2015 5:30:49 PM
VIVIAN LONG
CLERK

**In the Court of Appeals
For the Seventh Court of Appeals District
Amarillo, Texas**

**TIMOTHY PARRISH
APPELLANT
VS.
TRISHA DUNAHOO
APPELLEE**

## ON APPEAL FROM THE 146TH JUDICIAL DISTRICT COURT OF BELL COUNTY,
## APPELLANT TIMOTHY PARRISH'S BRIEF

**CORBIN & ASSOCIATES, P.C., Attorneys
ASHLEY CLAPPER
SBN: 24076317
DANIEL A. CORBIN
SBN: 04814300
603 North 8th Street
Killeen, Texas 76541
Tel: (254) 526-4523
Fax: (254) 526-6711
legal@corbinlegalteam.com**

*Counsel for Timothy Parrish*

# TABLE OF CONTENTS

IDENTITY OF THE PARTIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF THE ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . .6

STATEMENT OF THE FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7-10

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-22

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CERTIFICATE OF WORD COUNT. . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## IDENTITY OF THE PARTIES AND ATTORNEYS

ATTORNEYS

ASHLEY CLAPPER
DANIEL CORBIN
Corbin & Associates, P.C.
603 N. 8th Street
Killeen, Texas 76541
Tel: (254) 526-4523
Fax: (254) 526-6711
Attorneys for Timothy Parrish

BRETT H. PRITCHARD
The Law Office of Brett H. Pritchard,
1201 South W.S. Young Drive
Killeen, Texas 76543
Tel: (254) 501-4040
Fax: (254) 953-1360
Attorney for Trisha Dunahoo

PARTIES

Timothy Parrish, Appellant

Trisha Dunahoo, Formerly Trisha Parrish, Appellee
(hereinafter Trisha Parrish)

# INDEX OF AUTHORITIES

## TEXAS CASES:

*Cameron v. Cameron*, 608 S.W. 2d 748 (Tex. App.—Corpus Christi 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Cook v. Cameron*, 733 S.W. 2d 137 (Tex. 1987). . . . . . . . . . . . . . . . . . .19

*Hicks v. Hicks*, 348 S.W. 3d 281 (Tex. App.—Houston [14th dist] 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17,18

*Joyner v. Joyner*, 352 S.W. 3d 746 (Tex. App.—San Antonio 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12, 13, 14, 16

*Shanks v. Shanks*, 110 S.W. 3d 444 (Tex. 2003) . . . . . . . . . . . . . 12, 13, 15

*Statin v. Deutsche Bank Nat'l Trust Co.*, 2014 U.S. App. LEXIS 24064 (5th Cir. Tex. Dec. 19, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## STATUTES:

Tex. Fam. Code § 9.006 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Tex. Fam. Code § 9.007 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . .. 12, 13
Tex. Fam. Code § 9.008 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## STANDARD OF REVIEW

The standard of review for determining whether the district court had subject matter jurisdiction is de novo. *Joyner v. Joyner*, 352 S.W. 3d 746, 749 (Tex. App.—San Antonio 2011). "The issue of jurisdiction in this case turns on whether the trial court modified or clarified the DRO." *Id.* at 749.

## STATEMENT OF THE CASE

Timothy Parrish filed a Motion for Clarification of Military Retirement in the 146th Judicial District Court seeking to clarify the award of military retirement awarded to Trisha Parrish at the conclusion of his military service. C.R. 153. Trisha Parrish filed a Motion for Enforcement of Military Retirement. Subsequently, Trisha Parrish filed a Supplemental Motion to Enforce Military Retirement. C.R. 185. The district court heard the Motion for Clarification of Military Retirement on May 6, 2014. C.R. 198. The district court took the matter under advisement and issued a Memorandum Ruling on May 22, 2014. C.R. 198. The Court ordered that the *End of Award* provision contained in the 2008 Domestic Relations Order should be removed and a new Domestic Relations Order should be entered. (Exhibit C)[1]. The Court signed a new Domestic Relations Order on November 12, 2014. (Exhibit D)[2]

---

[1]Memorandum Ruling

[2]2014 Domestic Relations Order

## STATEMENT OF THE ISSUES PRESENTED

1.  Did the District Court have subject matter jurisdiction to remove the *End of Award* provision thereby modifying the award of property as originally set out in the Final Decree of Divorce and the 2008 Domestic Relations Order?

2.  Was the removal of the *End of Award* provision from the 2008 Domestic Relations Order barred by res judicata and therefore an error for the District Court remove the provision?

STATEMENT OF FACTS

Timothy Parrish and Trisha Parrish were married on October 3, 1994. C.R. 5. Subsequently the couple divorced on April 30, 2008 at which time the Judge signed a Final Decree of Divorce and a Domestic Relations Order. (Trial Tr. Vol. 1, p. 5, May 6, 2014). The divorce decree and DRO were signed at the same time. (Trial Tr. Vol. 1, p. 9, May 6, 2014). The Final Decree of Divorce states in relevant part "The Court finds that the parties have entered into a written agreement as contained in this decree by virtue of having approved this decree as to both form and substance." (Exhibit A)[3]. To the extent permitted by law, the parties stipulate that the agreement is enforceable as a contract." (Trial Tr. Vol. 1, p. 13, May 6, 2014). The Domestic Relations Order is incorporated into the final decree of divorce specifically on pages 15 and 16. (Exhibit A)[4]. The parties signed the Final Decree of Divorce approving it as to both form and substance. (Exhibit A)[5] The Domestic Relations Order contained a provision that ended the award of military retirement to Trisha Parrish after she received the retirement for

---

[3]Final Decree of Divorce, page 1

[4]Final Decree of Divorce, page 15-16

[5]Final Decree of Divorce, page 20

7

thirteen years and four months (herein after known as the *End of Award* provision). (Trial Tr. Vol. 1, p. 6, May 6, 2014). Trisha Parrish signed the Domestic Relations Order, approving it as to both form and substance, and had it notarized prior to the entry of the Domestic Relations Order. (Trial Tr. Vol. 1, p. 6, May 6, 2014 and Exhibit B[6]). Timothy Parrish continued his military service and retired in December 2011. (Trial Tr. Vol. 1, p. 5, May 6, 2014). The Domestic Relations Order was submitted to Department Finance Accounting Services (herein after "DFAS"). (Trial Tr. Vol. 1, p. 5, May 6, 2014). Timothy Parrish subsequently filed a Motion for Clarification of Military Retirement Division on January 4, 2012 to clarify the amount of the award of the military retirement Trisha Parrish was going to receive. (Trial Tr. Vol. 1, p. 6, May 6, 2014). Trisha Parrish filed a Petition for Enforcement of Retirement on November 25, 2013 requesting the court to enforce the military retirement. C.R. 167. Subsequently, Trisha Parrish filed a Supplemental Petition for Enforcement of Retirement asking the court to remove the provision ending the award of military retirement that she would receive from the Domestic Relations Order. (Trial Tr. Vol. 1, p. 6, May 6, 2014). The court held a hearing on May 6, 2014 regarding the clarification. C.R. 198. Timothy Parrish argued that the challenge to the *End of*

---

[6]2008 Domestic Relations Order, page 5.

*Award* provision was barred by res judicata. (Trial Tr. Vol. 1, p. 6, May 6, 2014). Trisha Parrish argued that the court was not barred by res judicata because the provision was not contained in the divorce decree but contained in the DRO. (Trial Tr. Vol. 1, p 16, May 6, 2014). She reasoned that "the divorce decree is the substantive contract of the parties," and that the DRO is not substantive. (Trial Tr. Vol. 1, p. 9, May 6, 2014). "The contract was the Final Decree of Divorce, and all a Domestic Relations Order does is effectuates what the court has ordered." (Trial Tr. Vol. 1, p. 11, May 6, 2014). She goes on to say that Domestic Relations Orders are never incorporated by reference, and in this case are not incorporated by reference." (Trial Tr. Vol. 1, p. 16, May 6, 2014). Trisha Parrish further argues that the court has unlimited jurisdiction to amend a DRO. (Trial Tr. Vol. 1, p. 9, May 6, 2014). She argues that the *End of Award* provision divests her of her separate property rights because she is entitled to the retirement until the death of herself or the death of Parrish. (Trial Tr. Vol. 1, p. 10, May 6, 2014). Parrish's rebuttal argument was that the 2008 DRO was incorporated into the Final Decree of Divorce and was a contract between the parties. (Trial Tr. Vol. 1, p.13, May 6, 2014). He argued that Trisha Parrish was trying to undo a substantive property division that was a final judgment. (Trial Tr. Vol. 1, p. 13, May 6, 2014). He points out that she had 30 days to file an appeal and she made no attempt to appeal

9

the final judgment. (Trial Tr. Vol. 1, p. 13, May 6, 2014). The Court took the matter of clarification under advisement and subsequently issued a memorandum ruling. (Trial Tr. Vol. 1, p. 21, May 6, 2014; Exhibit C[7]). The memorandum ruling clarified the calculation for Trisha Parrish's portion of the military retirement. (Exhibit C[8]). Additionally, the memorandum ruling removed the provision ending the award of military retirement from the Domestic Relations Order. (Exhibit C[9]). On April 30, 2008 the District Court signed the amended Domestic Relations Order. (Exhibit D[10]). Timothy Parrish filed a notice of appeal on December 10, 2014 to challenge the district court's ruling and entry of the 2014 Domestic Relations Order. C.R. 220.

---

[7]Memorandum of Ruling.

[8]Memorandum of Ruling

[9]Memorandum of Ruling

[10]2014 Domestic Relations Order

## SUMMARY OF THE ARGUMENT

The district court did not have subject matter jurisdiction to remove the *End of Award* provision in the 2008 Domestic Relations Order. The district court has the power to clarify any ambiguous terms of the Domestic Relations Order but does not have jurisdiction to modify or amend the terms of the Domestic Relations Order if the terms are not ambiguous. The *End of Award* provision was not ambiguous and therefore was a modification of a substantive property division that was beyond the jurisdiction of the district court.

Additionally, the terms of the 2008 Domestic Relations Order constitute a final judgment. The removal of the *End of Award* provision is a collateral attack on a final judgment and is barred by res judicata.

11

I.     **THE DISTRICT COURT DID NOT HAVE SUBJECT MATTER JURISDICTION TO REMOVE THE PROVISION ENDING THE AWARD OF MILITARY RETIREMENT BECAUSE IT MODIFIED AN UNAMBIGUOUS SUBSTANTIVE PROPERTY DIVISION FROM THE DIVORCE DECREE AND THE 2008 DOMESTIC RELATIONS ORDER.**

The Texas Family Code gives the trial court that rendered a divorce decree jurisdiction to enforce and clarify the property division contained in that decree. Tex. Fam. Code §9.006-9.008. "An order… that amends, modifies, alters, or changes the actual, substantive division of property made or approved in the final decree of divorce…is beyond the power of the divorce court and is unenforceable." *Joyner v. Joyner*, 352 S.W. 3d 746, 750 (Tex. App.—San Antonio 2011). Subject matter jurisdiction cannot be waived and may be raised for the first time on appeal. *Statin v. Deutsche Bank Nat'l Trust Co.*, 2014 U.S. App. LEXIS 24064 (5th Cir. Tex. Dec. 19, 2014). "Judgments should be construed as a whole to harmonize and give effect to the entire decree." *Shanks v. Treadway*, 110 S.W. 3d 444, 447. "If the decree, when read as a whole, is unambiguous as to the property's disposition, the court must effectuate the order in light of the literal language used." *Id.* "When the signing of the DRO occurs

12

contemporaneously with the signing of the divorce decree, courts have construed the DRO as part of the divorce decree." *Hicks v. Hicks* 348 S.W. 3d 281, 284 (Tex. App—Houston [14th dist.] 2011). The trial court is without power to modify an unambiguous property division contained in a divorce decree. Tex. Fam. Code 9.007(b), *Joyner v. Joyner*, 352 S.W. 3d 746, 750 (Tex. App.—San Antonio 2011). "An order… that amends, modifies, alters, or changes the actual, substantive division of property made or approved in the final decree of divorce…is beyond the power of the divorce court and is unenforceable." *Id.*

The Court in *Shanks v. Shanks*, 110 S.W. 3d 444 (Tex. 2003) signed a divorce decree in 1981 that awarded the wife a 25% interest in the husband's retirement benefits. There was no Domestic Relations Order entered at that time. *Id* at 445. In 1998, seventeen years later, the husband filed a Motion to Sign Qualified Domestic Relations Order. *Id.* His contention was that the wife's retirement benefits should be calculated as 25% as of the date of divorce. *Id.* The Wife asserted that the QDRO calculation was barred by res judicata and should be interpreted as a collateral attack on the property division set out in the divorce decree. *Id.* The trial court valued the wife's retirement benefits as of the date of divorce. *Id* at 446. The Court of Appeals reversed the trial court stating the "trial court's QDRO impermissibly altered the substantive division of property made in

13

the original divorce decree." *Id.* The Supreme Court of Texas affirmed the court of appeals. *Id.* The Supreme Court of Texas reasoned that the decree as written was unambiguous and was therefore not subject to clarification. *Id* at 447. They further assert that "the fact that the district court erroneously applied the law when it entered the divorce decree does not alter the decree's plain language." *Id.*

In *Joyner v. Joyner*, 352 S.W. 3d 746 (Tex. App.—San Antonio 2011) the husband asserts that the trial court lacked jurisdiction to enter a Domestic Relations Order that impermissibly modified the substantive provisions of his military retirement. *Id.* The parties divorced in 2001 at which time the court entered a divorce decree that awarded the wife a portion of the husbands military retirement "and stated that her portion would be 'more particularly defined in a Domestic Relations Order.'" *Id* at 747-748. The Court entered a Domestic Relations Order at the same time that awarded the wife 50% of the community share of the husband's retirement in a hypothetical calculation. *Id.* in 2005, after the husband retired, DFAS began paying the wife 50% of all accrued amounts of the husband's retirement. *Id.* The husband filed to clarify the award of military retirement. *Id.* The court entered an amended Domestic Relations Order that changed the wife's retirement to 37 percent. *Id.* The husband appealed the judgment stating that it was an impermissible change of the substantive property

14

division. *Id* at 749. The court found that the award to the wife was "not ambiguous because it is expressed with mathematical certainty," and was therefore not within the subject matter jurisdiction of the court to change. *Id* at 750.

Timothy Parrish presents an argument similar to *Shanks,* and contends that the district court did not have subject matter jurisdiction to remove the *End of Award* provision from the 2008 Domestic Relations Order because the provision was not ambiguous. This issue is raised for the first time on appeal. In this case, the trial court approved and signed a Final Decree of Divorce and Domestic Relations Order in 2008 that contained the *End Of Award* provision. Much like the specified percentage in Shanks was unambiguous this provision is not ambiguous. Trisha Parrish never asserts that the *End of Award* provision is ambiguous and therefore subject to clarification. Instead, Trisha Parrish asserts that the original provision was not permissible under the law at the time the decree and the DRO were signed. However, the Supreme Court of Texas has struck down this argument in *Shanks.* The district court only has subject matter jurisdiction to clarify an ambiguous term which is not the case here. The plain language of the 2008 Domestic Relations Order clearly stated that the award would end after she received the retirement for 13 years and 4 months after it began or until the death of one of the parties. The district court in this case wrongfully changed the award

15

that was set out in the original judgment in plain language which is beyond the scope of the court's subject matter jurisdiction.

Additionally, the court in *Joyner* found that the court was without power to amend the DRO when the percentage was fixed with a mathematical certainty. Unlike the award in *Joyner* this case does not have a mathematical certainty. However, the language in the *End of Award* provision specifies a total number of years and months that Trisha Parrish is to receive the award of military retirement. The specific end date is unambiguous and is not open to interpretation and is therefore, outside of the subject matter jurisdiction of the court to remove.

Furthermore, Trisha Parrish argues that the Domestic Relations Order is simply an effectuating document and that the actual judgment is the Final Decree of Divorce that is subject to clarification. This contention is flawed in two different respects. First, the plain language of the Final Decree of Divorce states that the terms are "more particularly specified in the domestic relations order signed coincident with this decree and incorporated verbatim in it by reference." (Exhibit A)[11]. The justification she gives to the court is basically that even though the Final Decree of Divorce contains that language it does not really mean what

---

[11] Final Decree of Divorce, page 15-16

16

the plain language states. This argument is simply without merit. The terms of the Final Decree of Divorce are "enforceable as a contract," including the provision that incorporates the 2008 Domestic Relations Order into the Final Decree of Divorce. Furthermore, by signing the Final Decree of Divorce Trisha Parrish agreed to the terms of the 2008 Domestic Relations Order that was incorporated into the decree, specifically the *End of Award* provision.

In addition to the plain language of the Final Decree of Divorce that incorporates the terms of the 2008 DRO, the courts have addressed this issue in *Hicks v. Hicks*, 348 S.W.3d 281 (Tex. App. –Houston [14th dist.] 2011).

The parties in *Hicks* entered into an agreed Final Decree of Divorce which was signed by the court at the same time the Domestic Relations Order was signed. *Id* at 282. The divorce decree expressly deleted any reference to the DRO contained in the decree. *Id* at 284. The DRO contained a provision "designating Wife as the former spouse beneficiary of the [husband's] Survivor Benefits Plan when no such designation was made in the final decree of divorce." *Id* at 283. The husband appealed the judgment stating that the court erred in signing the DRO with the additional provision as it was not contained in the divorce decree. *Id.* The Court found that the general rule is "when the signing of the DRO occurs

17

contemporaneously with the signing of the divorce decree, courts have construed the DRO as part of the divorce decree." *Id.* at 284. The court reasoned that in this specific case, because the "references to the DRO are expressly deleted from the agreed decree", that the court was to view the DRO as a separate order and not to be read as part of the agreed divorce decree. *Id.*

Trisha Parrish urges the court to view the Final Decree of Divorce as the final judgment and the 2008 DRO as an effectuating document, whose terms are not to be read as part of the substantive final judgment much like the Appellant in *Hicks*. However, unlike *Hicks*, the Final Decree of Divorce in this case specifically points to the 2008 Domestic Relations Order as an extension of the final decree to be "incorporated verbatim in [the final decree] by reference." (Exhibit A). In applying *Hicks* to this case the court must view the 2008 Domestic Relations Order to be read in conjunction with the divorce decree and the terms contained in the 2008 DRO should be treated as those contained in the divorce decree.

When the Court reads the Final Decree of Divorce and the 2008 Domestic Relations Order as incorporated into the decree by virtue of the documents plain language, and under the court's decision in *Hicks v. Hicks*, 348 S.W. 3d 281 (Tex.

18

App.—Houston[14th dist.] 2011), as a whole, the court will find that the *End of Award* provision is unambiguous and therefore beyond the subject matter jurisdiction of the court to clarify. As such, the Seventh Court of Appeals should reverse the ruling of the 146th Judicial District Court.

**II.   THE DISTRICT COURT ERRED IN REMOVING THE END OF AWARD PROVISION FROM THE DOMESTIC RELATIONS ORDER BECAUSE A COLLATERAL ATTACK WAS BARRED BY RES JUDICATA.**

"The doctrine of Res Judicata bars relitigation of issues decided in a final judgment." *Cook v. Cameron*, 733 S.W. 2d 137, 140 (Tex. 1987). Errors other than lack of jurisdiction render the judgment merely voidable and must be attacked within the prescribed time limits. *Id.* "A judgment is void only when it is apparent that the court rendering the judgment 'had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court.'" *Id.* "Errors other than lack of jurisdiction render a judgment merely voidable and must be attacked within prescribed time limits." *Id.*

In *Cook v. Cameron* 733 S.W. 2d 137 (Tex. 1987), the court signed a final decree in March 1979 that awarded the wife 35% of the husbands gross retired pay. *Id* at 138. The court also added a contingent award that would make the

19

award to the wife an amount equal to 45% if there were further litigation in the case, other than a direct appeal. *Id* at 139. There was a direct appeal taken (*Cameron v. Cameron*, 608 S.W. 2d 748 (Tex. App.—Corpus Christi 1980) and the court affirmed the award of 35% of the gross retirement to the wife but clarified dates that were not to be included in the calculation. *Id*. After the husband retired he refused to pay the wife 35% of the gross retirement because DFAS was paying 35% of the net retirement. *Id*. The wife subsequently filed an enforcement. *Id*. The trial court refused to enforce the decree as did the court of appeals stating that the amount of the award affirmed in the Texas Supreme Court opinion in *Cameron v. Cameron*, 608 S.W. 2d 748 (Tex. Civ. App.—Corpus Christie 1980) was ambiguous and subject to clarification. *Id*. The Supreme Court of Texas found that the refusal of the trial court and the appellate court to enforce the ruling in *Cameron* was a collateral attack on a final judgment. *Id* at 140. The Supreme Court of Texas reasoned that the doctrine of res judicata applied to the final judgment and the collateral attack was without merit. *Id*. The husband further argued that the judgment was void because the contingent award divested him of his separate property rights and was therefore subject to collateral attack. *Id*. The Court found that there had not been a direct appeal of the contingent award during the prescribed time limits and therefore that provision

20

was not subject to collateral attack. *Id.* The Court reasoned that "even though the contingent award was improper, the divorce decree, including the contingent penalty, is not subject to Cameron's collateral attack. Res judicata also applies here to prevent relitigation of issues which should have been litigated in an earlier appeal." *Id.*

This case is almost identical to *Cook*. Timothy Parrish argued that Trisha Parrish is attempting to change substantive property division by removing the *End of Award* provision contained in the 2008 Domestic Relations Order. He reasons that this provision in the final judgment cannot be collaterally attacked because it is barred by Res Judicata. The Court signed the Final Decree of Divorce and Domestic Relations Order on April 30, 2008 at which time the judgment became final. Trisha Parrish had 30 days to file an appeal of that judgment if she disagreed with the judgment, which she failed to do. Additionally, Trisha Parrish makes the exact same argument contained in *Cook*, that the trial court improperly divested her of her separate property rights. However, the Texas Supreme Court struck down that exact argument because it is one that should have been appealed directly after the judgment. The law does not allow Trisha Parrish to return to court six years later to attempt to change a property division that she is no longer happy with, that she agreed to in the original documents.

21

The Final Decree of Divorce and the Domestic Relations Order became a final judgment of the court 30 days after they were signed in 2008. Trisha Parrish did not appeal the substantive property division within the prescribed time limits. Therefore, the Seventh Court of Appeals should reverse the 146th District Court's ruling because the attack on the substantive property division was barred by res judicata.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Appellant, TIMOTHY

PARRISH, respectfully prays this Court reverse the Trial Court's ruling.

Appellant respectfully prays for any such other and further relief to which

Appellant may be entitled to at law or in equity.

Respectfully submitted,

CORBIN & ASSOCIATES, PC ATTORNEYS
603 North 8th Street
Killeen, Texas 76541
Tel: (254) 526-4523
Fax: (254) 526-6711

By: _____

ASHLEY CLAPPER
State Bar No. 24076317
DANIEL A. CORBIN
State Bar No. 04814300
Attorneys for Appellant

23

## CERTIFICATE OF SERVICE

Pursuant to TEX. R. APP. P. 9.4(i), I certify that a copy of this brief has a word count of 4,193 words as counted by Wordperfect word count feature.

_Ashley Clapper_
DANIEL A. CORBIN

24

## CERTIFICATE OF SERVICE

Pursuant to TEX. R. APP. P. 9.5, I certify that a copy of this brief has been mailed via U.S. Mail, postage prepared to the following on ___2-17-15___ .


BRETT H. PRITCHARD
The Law Office of Brett H. Pritchard,
1201 South W.S. Young Drive
Killeen, Texas 76543
Tel: (254) 501-4040
Fax: (254) 953-1360
Attorney for Trisha Ann Parrish


_____
DANIEL A. CORBIN

25

## APPENDIX

EXHIBITS

    A.       Final Decree of Divorce

    B.       2008 Domestic Relations Order

    C.       Memorandum Ruling

    D.       2014 Domestic Relations Order

    E.       2014 Domestic Relations Order Nunc Pro Tunc

CASE LAW

1. *Cameron v. Cameron*, 608 S.W. 2d 748 (Tex. App.—Corpus Christi 1980)

2. *Cook v. Cameron*, 733 S.W. 2d 137 (Tex. 1987)

3. *Hicks v. Hicks*, 348 S.W. 3d 281 (Tex. App.—Houston [14th dist] 2011)

4. *Joyner v. Joyner*, 352 S.W. 3d 746 (Tex. App.—San Antonio 2011)

5. *Shanks v. Shanks*, 110 S.W. 3d 444 (Tex. 2003)

6. *Statin v. Deutsche Bank Nat'l Trust Co.*, 2014 U.S. App. LEXIS 24064 (5th Cir. Tex. Dec. 19, 2014).



LexisNexis®

Paul Archibald Cameron, Appellant, v. Sue Akers Cameron, Appellee

No. 1578

Court of Civil Appeals of Texas, Thirteenth District, Corpus Christi

608 S.W.2d 748; 1980 Tex. App. LEXIS 4020

October 23, 1980

SUBSEQUENT HISTORY: [**1] Rehearing Denied November 20, 1980.

PRIOR HISTORY: On Appeal from the 28th District Court of Nueces County, Texas

COUNSEL: For Appellant: Charles R. Cunningham - Corpus Christi, TX.

For Appellee: Scott T. Cook - Corpus Christi, TX.

JUDGES: Horace S. Young, Associate Justice.

OPINION BY: YOUNG

OPINION

[*749] In this appeal from a part of the trial court's judgment in a divorce suit, Paul Archibald Cameron is appellant and Sue Akers Cameron is appellee. The judgment granted the divorce, appointed appellee as managing conservator of the one minor child, ordered appellant to pay child support, and divided the property of the parties. Although there are some fifteen points of error raised by appellant, the central issue in this appeal involves the trial court's divestiture of appellant's title to his separate personal property. We hold that such divestiture is not permissible by a trial court under the recent Supreme Court case of Campbell v. Campbell, 23 Tex.Supp.Ct.J. 391 (June 4, 1980). We accordingly reverse and remand in part.

[*750] A review of the pertinent facts of this case are as follows. Appellant entered the United States Air Force on June 22, 1954, in New York. [**2] In 1955, appellant was stationed at Lubbock Air Force Base in Texas. The parties married in Midland, Texas on September 29, 1957, and departed that day for California. The parties lived in California, a community property state, for three months. Thereafter, the parties lived in various common law states. Appellant retired from the military on September 1, 1977, at Grissom Air Force Base, Indiana. The parties then moved to Corpus Christi, Texas.

The parties were divorced on March 29, 1979. At the time of trial, appellant was receiving $1,507.31 per month under his military retirement benefits and earning an annual salary of $13,000.00 as an accounting instructor at Corpus Christi State University. Appellee, at the time of trial, was earning an annual salary of $18,000.00 as the Director of Placement at Del Mar College in Corpus Christi.

Appellant, in points of errors, one, two and seven, contends the trial court erred in divesting him of title to his separate property military retirement benefits. It is well settled that an interest in a military retirement plan is an earned property right. This property right accrues by reason of the years of service spent in the military [**3] by that spouse. Busby v. Busby, 457 S.W.2d 551 (Tex.Sup. 1970); Cearley v. Cearley, 544 S.W.2d 661 (Tex.Sup. 1976). Military retirement, being an earned property right, is subject to division upon dissolution of the

marriage. The inception of title rule is applied to determine the existence of a community property interest in retirement benefits. *Busby v. Busby, supra; Mitchim v. Mitchim, 509 S.W.2d 720* (Tex.Civ.App. -- Austin 1974), rev'd on other grounds, *518 S.W.2d 362 (Tex.Sup. 1975)*. Hence, the military retirement benefits which accrue during the marriage while residing in common law states and the benefits which accrue while single are the separate property of the spouse in the military. Conversely, the retirement benefits which accrue while residing in community property states are community property. *Busby v. Busby, supra; Mitchim v. Mitchim, supra.*

Appellee counters appellant's divestiture theory in her supplemental brief, filed after the *Campbell* decision, by stating that the trial court did not actually divest appellant of title to his separate personal property. We disagree.

The judgment reads, in part, as follows:

> "Paul A. [**4] Cameron, Jr. is awarded as his sole and separate property all interest, separate and community, in the United States Military Retirement Plan described above, subject only to the life interest of Sue A. Cameron and the Survivor Benefit Package as hereinabove specified."

This language is found in the judgment under the heading "Division of Military Retirement." The court also ordered the following division of property:

> "A. *Property to Petitioner.* Petitioner is awarded the following as Petitioner's sole and separate property, and Respondent is hereby divested of all rights, title and interest in and to such property: . . . (8) that percentage of the United States Military Retirement of Paul A. Cameron, Jr. in accordance with the terms hereinafter set forth."

The judgment further recited that the United States Government would not directly forward to appellee her separate share of the retirement benefits. The court, therefore, made appellant constructive trustee of thirty-five percent of the retirement benefits and ordered him to pay such sum to appellee within five days of receipt.

In construing the meaning of a judgment, the entire contents of the instrument [**5] must be considered. The judgment should be read as a whole and each part should be interpreted with reference to its entirety. *Lone Star Cement Corporation v. Fair, 467 S.W.2d 402 (Tex.Sup. 1971); State v. Starley, 413 S.W.2d 451* (Tex.Civ.App. -- Corpus Christi 1967, no writ). We hold the judgment clearly divested appellant of title to thirty-five percent of his retirement benefits.

[*751] Prior to the recent Supreme Court case of *Campbell v. Campbell, supra,* several of the Courts of Civil Appeals had held that while a trial court may not divest one spouse of title to his or her separate real property and transfer title to the other spouse [*Eggemeyer v. Eggemeyer, 554 S.W.2d 137 (Tex.Sup. 1977)]* the trial court could divide the separate personal property of the parties. The Supreme Court, however, in *Campbell* clearly stated that they consider their holding in *Eggemeyer* as stare decisis and hence controlling upon the issue of whether a trial court may divest a spouse of his or her separate personal property. The following language from *Eggemeyer* was quoted in *Campbell:*

> "Trial Courts have a broad latitude in the division of the [**6] marital community property, but that discretion does not extend to a taking of the fee to the separate property of the one and its donation to the other."

The Court accordingly held that a trial court may not divest one spouse of his or her title to separate personal property and transfer title to the other spouse. Hence, the divestiture of appellant's title to thirty-five percent of his separate property military retirement benefits was erroneous. Appellant's points of error one, two and seven are sustained.

Appellant, in his third point of error, contends that the trial court erred in awarding one-half of the United States Savings Bonds to appellee. These bonds were acquired from funds withheld from appellant's military pay. The record reflects that the appellant was in the military for a total of 278 months. Of these 278 months, appellant was single for 39 months. During the remaining 239 months the parties resided in common law states for 233 months and in a community property state

for three months. We hold, therefore, that 275/278 of the United States Savings Bonds were the separate property of appellant. As we have mentioned, a trial court may not divest one spouse [**7] of the title to his or her separate property and transfer the same to the other spouse. *Campbell v. Campbell*, supra. Appellant's third point of error is sustained.

Appellant, in his fifth point of error, contends that the trial court erred in ordering him to pay a $2,800.00 debt. This debt arose as a result of a savings account in Wachovia Bank and Trust Company, Kingston, North Carolina. There was testimony in the lower court with regard to the savings account. Appellant testified that it was his separate property account. Appellee testified that she was authorized to draw on the account and it was, therefore, a jointly owned savings account of the parties.

Prior to the separation of the parties, appellee withdrew $2,800.00 from the savings account. This sum was approximately one-half of the balance. Appellant thereafter withdrew the remaining balance of the account plus an additional $2,800.00. The additional $2,800.00 was withdrawn by appellant due to an error of the bank. The bank, at the time of trial, was in the process of making a claim against the parties for the $2,800.00 paid in error.

All property possessed by either spouse at the dissolution of the marriage [**8] is presumed to be community property. Tex.Fam.Code Ann. § 5.02. Appellant had the burden of rebutting the presumption that the savings account was part of the community estate. *Tarver v. Tarver, 394 S.W.2d 780 (Tex.Sup. 1965); Cervantes v. Cervantes, 591 S.W.2d 332* (Tex.Civ.App. -- Corpus Christi 1979, no writ). We find that appellant has failed to overcome this burden. Appellant's fifth point of error is overruled.

After a careful review of appellant's remaining points of error and appellee's cross-point, we deem it unnecessary to consider these points in light of our holding.

Under Rule 434, T.R.C.P., that the portion of the judgment dividing the property of the parties is reversed, severed and remanded to the trial court for a new trial on that issue. The remainder of the judgment is affirmed. The costs of this appeal are taxed one-half to each of the parties.



Sue Akers Cook, Formerly Sue Akers Cameron, Petitioner, v. Paul Archibald Cameron, Respondent

No. C-4658

SUPREME COURT OF TEXAS

733 S.W.2d 137; 1987 Tex. LEXIS 369; 30 Tex. Sup. J. 550

July 8, 1987, Decided

PRIOR HISTORY: [**1] FROM NUECES COUNTY THIRTEENTH DISTRICT.

COUNSEL: Dudley, Mr. William A., Harris, Cook, Browning, Jordan & Hyden, Cook, Mr. Scott T., Harris, Cook, Browning, Jordan & Hyden, for petitioner.

Viles, Mr. Bruce D., Wood & Burney, for respondent.

JUDGES: Franklin S. Spears, Justice. Concurring and dissenting opinion by Wallace.

OPINION BY: SPEARS

OPINION

[*138] ON MOTION FOR REHEARING

We grant the motion for rehearing, withdraw the judgment and opinion of March 18, 1987, and substitute this opinion.

This is a post-judgment suit seeking to enforce our judgment in *Cameron v. Cameron*, 641 S.W.2d 210 (Tex. 1982). The trial court refused to order Paul Cameron to pay Sue Cook the difference between our judgment affirming the divorce decree awarding thirty-five percent gross military retirement benefits and the government's direct payment of thirty-five percent net disposable retirement. The court of appeals affirmed. 703 S.W.2d 690. We reverse the judgment of the court of appeals and render judgment for Cook.

Sue Cook, formerly Sue Cameron, and Paul Cameron divorced in March 1979. As a part of the divorce decree in the prior suit, the trial court awarded Cook thirty-five percent [**2] of Cameron's gross military retirement pay. The court of appeals reversed the trial court's award. *Cameron v. Cameron*, 608 S.W.2d 748 (Tex.Civ.App. -- Corpus Christi 1980). In reversing that court of appeals' judgment, this court stated:

> The divorce decree, dated March 29, 1979, awards Sue Cameron "thirty-five percent (35%) of the *gross* present and future Military Retirement presently being received." Sue Cameron is entitled to recover that thirty-five percent but not from the period from March 25, 1979 to June 25, 1981. Therefore, we affirm that part of the trial court judgment awarding Sue Cameron thirty-five percent of [*139] the military retirement pay . . . . (emphasis added)

641 S.W.2d 210, 213. Our opinion further addressed the award of U.S. Savings Bonds. In the conclusion, this court held regarding the military retirement benefits:

> We reverse that part of the judgment of the court of appeals that reversed the trial

court's judgment that Sue Cameron receive thirty-five percent of military retirement pay, and we render judgment awarding Sue Cameron her share of the military retirement pay but only from June 25, 1981. *Id. at 223.*

[**3] The divorce decree also granted Cook *forty-five* percent of Cameron's gross military retirement in the event further litigation other than a direct appeal was required to enforce the award of *thirty-five* percent gross. That provision was not appealed to this court in *Cameron.*

This present action arose when Cameron disputed an amount withdrawn by Cook from a supercedeas bond on deposit with the trial court. Cook returned to the trial court that rendered the divorce decree and filed a motion for contempt against Cameron, a motion to enforce judgment, and a motion in aid and clarification of judgment. The trial court's order of July 25, 1983, held that Cameron was required under this court's judgment to pay thirty-five percent of his gross retirement pay. The trial court awarded Cook an equitable lien for the arrearages, but determined Cameron's non-compliance was in good faith. The court held him in contempt for not furnishing an accounting statement to Cook, but refused to activate the contingent benefit provision awarding forty-five percent gross retirement.

In June 1983, the United States Government began paying Mrs. Cook directly, but only in an amount equal to thirty-five [**4] percent of *net disposable* military retirement. Cameron refused to pay the difference between our judgment and the government's direct payment. Cook again returned to the trial court in November, 1983 and filed a second amended motion for contempt and a motion to enforce judgment, both of which the court denied. The trial court reasoned the Uniform Services Former Spouse's Protection Act *10 U.S.C. § 1408 (1983)* (USFSPA) only applies to net disposable retirement, and a court may not, by valid judgment, compel a payment of gross.

Cook then appealed to the court of appeals which affirmed the trial court's order. The court of appeals determined the trial court had no jurisdiction to hear Cook's motion for enforcement because our *Cameron* judgment was ambiguous. In the concluding sentences of *Cameron,* we "render[ed] judgment awarding Sue

Cameron her share of Military Retirement. . . ." *641 S.W.2d at 223.* Even though the opinion earlier affirmed the trial court's award of a gross percentage, the court of appeals stated it was unclear whether "her share of military retirement" referred to gross or net disposable benefits. The court of appeals held the trial court had no jurisdiction [**5] to resolve the ambiguity or enforce the judgment since the Supreme Court had rendered our "own judgment." The court also affirmed the trial court's refusal to award attorney's fees to Cook.

On appeal here, Cook argues that the trial court and the court of appeals erred in failing to enforce our *Cameron* judgment affirming the decree awarding thirty-five percent of gross military retirement pay. Cook contends the trial court had a duty to enforce the decree as affirmed. We agree.

When an appellate court affirms a trial court's judgment or renders a judgment which the trial court should have rendered, that judgment becomes the judgment of both courts. *State v. Walker, 679 S.W.2d 484, 485 (Tex. 1984).* "It is the duty of the trial court to enforce the judgment as [rendered]." *City of Tyler v. St. Louis S.W. Ry. Co., 405 S.W.2d 330, 332 (Tex. 1966); see also* TEX. FAM. CODE § 3.70) (Vernon Supp. 1987)(enforcement of divorce decree). *Cameron* affirms the trial court's decree of thirty-five percent gross military retirement pay. *641 S.W.2d at 213.* The trial court's judgment, therefore, became the judgment of this court, and the trial court erred in not enforcing the [**6] judgment as rendered.

[*140] The refusal of the courts below to enforce the award of gross pay derives from their interpretation that the USFSPA only approves payment of net disposable retirement pay. While we recognize the trial court's and the court of appeals' concern that *Cameron* may conflict with the USFSPA, *Cameron* affirmed the award of gross pay, and that judgment became final. The doctrine of res judicata bars relitigation of issues decided in a final judgment. *Garcia v. R.C. Cola -- 7-Up Bottling Co., 667 S.W.2d 517, 519 (Tex. 1984).* Paul Cameron correctly asserts that a void judgment may be collaterally attacked; however, if the trial court's award of gross pay were void, we would have so held in *Cameron.* Thus, the lower courts' refusal to enforce *Cameron* as written because they disagreed with the award of gross benefits was an improper relitigation of issues determined in the prior final judgment. Although a holding may be

subsequently overruled or disapproved, the overruled judgment remains final to the parties involved. *Segrest v. Segrest, 649 S.W.2d 610, 612, cert. denied, 464 U.S. 894, 78 L. Ed. 2d 232, 104 S. Ct. 242 (1983).*

We [**7] next address the contingent increase award of forty-five percent gross military retirement. In the 1979 divorce decree, the trial court ordered thirty-five percent gross retirement pay was just and right only if Cook received that amount "without further litigation other than a direct appeal." In the event Cameron failed to comply with the award, the decree stated forty-five percent of the gross retirement pay was just and right. Cook argues that the motions to force Cameron to comply with the court's judgment constitute "further litigation," and therefore, she is entitled to the contingent increase.

Cameron contends the contingent increase is void and unenforceable as a matter of law. He asserts (1) the contingent provision renders the decree indefinite and uncertain because "further litigation" is undefined and unclear; (2) the trial court is authorized to make only one "just and right" division of property, and the contingent increase constitutes a second property division; and (3) the increase operates to divest him of his separate property after divorce. Cameron also claims the contingent provision is unconstitutional because it violates the open courts provision, the due process [**8] clause, separation of powers, and the equal rights amendment to the Texas Constitution.

A judgment is void only when it is apparent that the court rendering judgment "had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court." *Browning v. Placke, 698 S.W.2d 362, 363 (Tex. 1985).* Errors other than lack of jurisdiction render the judgment merely voidable and must be attacked within prescribed time limits. *Id.* The trial court issuing the divorce decree had jurisdiction of the parties, subject matter, and capacity to act as a court. Any error regarding the contingent increase then, rendered the judgment voidable, not void ab initio.

Cameron appealed the contingent increase provision to the court of appeals in his appeal from the divorce decree, but did not appeal the contingent award to this court. Cameron did appeal the contingent provision in his *Cameron* motion for rehearing, but by not submitting a crosspoint in *Cameron,* he waived the error. Thus, even

though the contingent award was improper, the divorce decree, including the contingent penalty, is not subject to Cameron's collateral [**9] attack. Res judicata also applies here to prevent relitigation of issues which should have been litigated in an earlier appeal. *Segrest,* 749 S.W.2d at 613. Determining that the contingent escalation is not void does not, however, completely resolve Cook's contention that the trial court erred in refusing to activate the penalty.

The Family Code authorizes a trial court to issue orders in aid or clarification of a former divorce decree. TEX. FAM. CODE ANN. § 3.70-.72 (Vernon Supp. 1987). On Cook's first motion for contempt and motion in aid and clarification, the trial court found Cameron in contempt for failing to forward an accounting statement to Cook [*141] within five days of his receipt, but that "finding of contempt does not amount to further litigation." On Cook's amended second motion, the trial court again refused Cook's request to activate the contingent escalation.

We hold the trial court's denial of Cook's request does not mandate reversal. Cameron's testimony at the contempt hearing established to the trial court that he did not willfully refuse to pay Mrs. Cook 35% of gross, but instead considered the counsel of a lawyer with the Air Force Accounting and [**10] Finance Center, the ranking legal officer at the Corpus Christi Naval Air Station, and his own attorneys. Cameron's conclusion that a gross amount was not required by our *Cameron* judgment appears to be in good faith and does not warrant our imposition of the improper contingent penalty. We agree that the action here resolving the dispute concerning our *Cameron* judgment does not constitute "further litigation" as intended by the decree.

Finally, Cook also argues she is entitled to attorney fees incurred in the proceeding to enforce the decree. A court may, in its discretion, award attorney fees in a proceeding to enforce a divorce decree. TEX. FAM. CODE ANN. § 3.77 (Vernon Supp. 1987). Cook has made no showing, however, that the court abused its discretion in failing to award attorney fees.

Accordingly, the judgments of the lower courts are reversed. We render judgment ordering the trial court to enforce the judgment in *Cameron v. Cameron* awarding Cook thirty-five percent of gross retirement benefits beginning June 25, 1981. This cause is remanded to the trial court solely to determine the amounts owing to

Cook.

CONCUR BY: WALLACE

DISSENT BY: WALLACE

DISSENT

CONCURRING AND DISSENTING

[**11] OPINION ON MOTION FOR REHEARING

I concur in the majority holding that Sue Cook is entitled to enforcement of the judgment rendered in *Cameron v. Cameron, 641 S.W.2d 210 (Tex. 1984)* awarding her 35% of Paul Cameron's gross military retirement benefits. However, I dissent from the majority's refusal to enforce the contingent increase award.

The majority concludes this lawsuit does not amount to "further litigation" because Cameron acted in good faith in refusing to honor the divorce decree. I disagree. The decree states that 35% of gross military retirement benefits "is determined to be just and right only in the event that [Cook] receives the allotted share without further litigation other than a direct appeal. . . ." Litigation is defined as a contest in the courts to enforce a right or seek a remedy. *Black's Law Dictionary* 841 (5th ed. 1979). The purpose of litigation is to preserve and enforce rights and secure compliance with the laws of the state. *Missouri, Kansas & Texas Ry. Co. v. Hickman, 183 U.S. 53, 60, 22 S. Ct. 18, 46 L. Ed. 78 (1901).* Because Cameron failed to honor the divorce decree, Cook was forced to file this lawsuit. By definition, she was forced [**12] to pursue further litigation whether Cameron acted in good faith or not. Consequently, she is entitled to 45% of Cameron's gross military retirement pay.

Cameron failed to properly challenge the contingent provision in his direct appeal of the divorce. Because he could have secured review of the provision in the divorce appeal, res judicata bars him from litigating that issue in this lawsuit. *Garcia v. RC Cola -- 7-Up Bottling Co., 667 S.W.2d 517, 519 (Tex. 1984).*

For the foregoing reasons, I would hold Cook is entitled to enforcement of the entire divorce decree including the contingent provision.


LexisNexis®

KYLE EDWARD HICKS, Appellant v. LA'KESHA MARIE HAYNES HICKS, Appellee

NO. 14-10-00577-CV

COURT OF APPEALS OF TEXAS, FOURTEENTH DISTRICT, HOUSTON

*348 S.W.3d 281; 2011 Tex. App. LEXIS 4909*

June 30, 2011, Opinion Filed

**PRIOR HISTORY:** [**1]
On Appeal from the 245th District Court, Harris County, Texas. Trial Court Cause No. 2009-73495. Judge Annette Kuntz.

**COUNSEL:** James N. Higdon of San Antonio, TX, for appellants.

William Leslie Shireman of Houston, TX, for appellees.

**JUDGES:** Panel consists of Chief Justice Hedges and Justices Seymore and Boyce.

**OPINION BY:** Adele Hedges

**OPINION**

[*282] In this divorce case, Kyle Edward Hicks ("Husband") complains of errors in a domestic relations order and in the final decree of divorce. He also contends that the trial court abused its discretion by awarding appellee, La'Kesha Marie Haynes Hicks ("Wife"), attorney's fees and expenses in the order denying Husband's motion to correct or reform the judgment. We affirm the final decree of divorce and the award of attorney's fees and expenses. We reverse and remand the domestic relations order for further proceedings consistent with this opinion.

**I. BACKGROUND**

In November 2009, Wife filed an original petition for divorce. In December 2009, Husband filed an original answer and an original counter-petition for divorce. In January 2010, the parties entered into an informal settlement agreement pursuant to *section 6.604 of the Texas Family Code*. In March 2010, the trial court signed the final [**2] decree of divorce, which was approved and consented to as to both form and substance by Husband and Wife. after Husband filed a motion for the trial court to do so. On the same day, the trial court signed the domestic relations order ("DRO") at issue, approved by only Wife and her attorney. References to the DRO are crossed out in the final decree of divorce. One deleted reference in the final decree under "Property to Husband" is initialed by "CB" and "LH," presumably Wife and her attorney; another deleted reference under "Property to Wife" is initialed by "CB" only.

In April 2010, Husband filed a motion to correct or reform the judgment, complaining about errors in both the final decree of [*283] divorce and the DRO. Husband also requested sanctions against Wife, her attorney, and/or their expert for allegedly misrepresenting the applicable federal law to the court, and Husband requested trial and appellate attorney's fees, expenses, and costs. Wife filed a response to the motion to correct or reform the judgment, stating that the motion was groundless and brought solely for the purpose of harassment. In addition, she requested trial and appellate attorney's fees, expenses, and costs. Wife [**3] filed a

separate motion for sanctions pursuant to *Rule 13 of the Texas Rules of Civil Procedure*, claiming that Husband's motion to correct or reform the judgment was groundless and brought for the purpose of harassment. She requested as sanctions (1) that the trial court deny the motion to correct or reform the judgment and (2) that she be awarded attorney's fees and expenses incurred in obtaining an order for sanctions.

The trial court held a hearing on Husband's motion to correct or reform the judgment and on Wife's request for attorney's fees in her response.[1] The trial court denied Husband's motion and ordered Husband to pay Wife's attorney's fees and expenses in the amount of $1,950.00. After the hearing, with the trial court's permission, Husband's trial counsel introduced expert testimony regarding the calculation of and the community interest in his military retirement pay.[2] This appeal followed.

> 1    At the hearing, Wife's trial counsel stated that she would dismiss her motion for sanctions if the trial court awarded the attorney's fees requested in her response, which the trial court did.
> 2    According to Husband's brief, this was done outside the presence of the trial judge.

## II. ANALYSIS

### A. [**4] DOMESTIC RELATIONS ORDER

In his first issue, Husband contends that the trial court erred in signing the DRO because the DRO contains a formula incorrectly calculating (1) the community interest in his military retirement pay and (2) the retirement pay itself. In addition, Husband claims that the DRO designates Wife as the former spouse beneficiary of his Survivor Benefit Plan when no such designation was made in the final decree of divorce.

The parties entered into an agreed final decree of divorce. For a consent judgment to be valid, each party must explicitly and unmistakably give his or her consent. *In re Broussard*, 112 S.W.3d 827, 832-33 (Tex. App.--Houston [14th Dist.] 2003, orig. proceeding). Approval as to form and substance, standing alone, does not transform a judgment into a consent judgment. *Id.* The body of the judgment must suggest, for example, that the judgment was rendered by consent. *Chang v. Link Nguyen*, 81 S.W.3d 314, 316 n.1 (Tex. App.--Houston [14th Dist] 2001, no pet.).

Husband and Wife attested by their signatures that they approved and consented to the divorce decree as to both form and substance. In the body of the decree, the trial court found that the parties had [**5] entered into a written agreement, the written agreement being the Final Decree of Divorce. The parties stipulated that the agreement was enforceable as a contract to the extent permitted by law. Because the parties entered into an agreed divorce decree, it is treated as a contract between the parties with the law of contracts governing the interpretation of the decree's legal force and meaning. *See Pate v. Pate*, 874 S.W.2d 186, 188 (Tex. App.--Houston [14th Dist.] 1994, writ denied).

[*284] The DRO in this case was signed on the same day as the agreed final decree of divorce. When the signing of the DRO occurs contemporaneously with the signing of the divorce decree, courts have construed the signing of the DRO as part of the divorce decree. *See, e.g., Gillin v. Gillin*, 307 S.W.3d 395, 396 (Tex. App.--San Antonio 2009, no pet.) (characterizing complaints about two provisions of an incorporated DRO as being an appeal from a divorce decree); *Beyer v. Beyer*, No. 03-06-00803-CV, 2009 Tex. App. LEXIS 5913, 2009 WL 2341857, at * 1 (Tex. App.--Austin July 28, 2009, pet. denied) (mem. op.) (appeal from domestic relations order portion of decree). While the DRO in this case was signed on the same day as the final decree of divorce, references [**6] to the DRO are expressly deleted from the agreed decree. The trial court approved the agreement of the parties "as contained in this Final Decree of Divorce." As such, we will review the DRO as a separate order and not as part of the agreed divorce decree.[3]

> 3    Post-divorce DROs, for example, are appealable orders. *See Shanks v. Treadway*, 110 S.W.3d 444, 446 (Tex. 2003).

Initially, we reject Wife's contention that Husband failed to preserve error on his issue. To preserve a complaint of error in a judgment, a party must inform the trial court of its objection by a timely filed motion to amend or correct the judgment, a motion for new trial, or some other similar method, and the trial court must rule on the motion either expressly or implicitly. *See Tex. R. App. P. 33.1(a)*. Husband properly preserved error with his timely filed motion to correct or reform the judgment complaining of the incorrect calculations in the DRO and Wife's beneficiary status. The motion was denied by written order.

Because the trial court did not make findings of fact or conclusions of law, we assume that it made all findings in support of its judgment. *Pharo v. Chambers Cnty., 922 S.W.2d 945, 948 (Tex. 1996)*. Furthermore, [**7] when findings of fact and conclusions of law are not filed, we must affirm the trial court's judgment on any legal theory that finds support in the evidence. *In re W.E.R., 669 S.W.2d 716, 717 (Tex. 1984)* (per curiam). A conclusion of law can be challenged on the ground that the trial court did not properly apply the law to the facts. *Treadway v. Shanks, 110 S.W.3d 1, 5 (Tex. App.--Dallas 2000), aff'd, 110 S.W.3d 444 (Tex. 2003)*. We review questions of law de novo. *In re Humphreys, 880 S.W.2d 402, 404 (Tex. 1994)*.

*Calculation of Community Interest in Retirement Pay*

The final decree of divorce awards to Wife as her sole and separate property "[a] 50% portion of the community sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to or as a result of Kyle Edward Hicks' service in the United States Air Force, including any accrued unpaid bonuses, disability plan or benefits, or other benefits existing by reason of or as a result of Kyle Edward Hicks' past or present employment." Therefore, the decree awards Wife a 50 percent portion of the community sums existing by reason of [**8] or as a result of Husband's past or present employment, including any accrued unpaid bonuses, disability plan or benefits, or other benefits. This award is consistent with the parties' informal settlement agreement which states: "Wife shall be awarded 50% of the [*285] community interest in husband's defined military retirement pay."

Under the Uniformed Services Former Spouses' Protection Act ("USFSPA"), a divorce court may treat disposable retired pay payable to a member for pay periods beginning after June 25, 1981 as marital property subject to division in accordance with the law of the jurisdiction. *See 10 U.S.C.A. § 1408(c) (West 2010)*. The purpose of the DRO in this case is to direct a military service, rather than a civil pension plan administrator, to make payments out of Husband's disposable retired pay to Wife. *See id. § 1408(d)(1)*.[4] This particular DRO sets out the following formula as a calculation of the sums owed to Wife:

Former Spouse shall receive [50 percent] of Member's Disposable Retired Pay (DRP), if, as and when received, multiplied by the following formula:

Number of months Member and Former Spouse were married during which Member was in service (183 mos.) divided by Number [**9] of months Member was in service as of retirement (not greater than 480 months)

X

Active duty base pay for an 0-6 with 26+ years of creditable service as of 01/01/2010 ($10,047.00 per month) divided by Active duty base pay of Member as of his date of retirement

Husband contends, and we agree, that the DRO does not calculate the community sums owed to Wife in accordance with Texas law. The DRO purports to use the fraction formula established in *Taggart v. Taggart, 552 S.W.2d 422 (Tex. 1977)*, by dividing the number of months married during Husband's service by the total number of months Husband will be in service as of retirement. However, the *Taggart* fraction no longer applies to situations such as this one.

4  "Disposable retired pay" is defined as the total monthly retired pay to which a member is entitled less certain amounts as applicable. *Id. § 1408(a)(4)*.

In *Taggart*, the Supreme Court of Texas developed a formula for determining the extent of the community's interest in a military retirement plan. *552 S.W.2d at 423-24* (holding that divorced spouse "owned as her part of the community estate a share in the contingent right to military benefits even though that right had not matured at the [**10] time of the divorce"). The Court used the following fraction when calculating the non-employee spouse's one-half interest in the employee-spouse's retirement pay: the number of months the parties were married during the employee spouse's employment divided by the total number of months of service that entitled the employee spouse to the retirement benefits.[5] *Id. at 424*.

5  In *Taggart* the Court used the number of months of service that entitled Mr. Taggart to the

retirement benefits (360 months) rather than the actual number of months of service at retirement. The Supreme Court of Texas has subsequently construed this fraction as follows: 'the number of months married under the plan divided by the total number of months employed under the plan at the time of retirement." *Shanks, 110 S.W.3d at 446* (citing *Taggart, 552 S.W.2d at 424*).

In *Berry v. Berry*, the Court altered the *Taggart* formula. *647 S.W.2d 945, 946-47 (Tex. 1983)*. The Court did so by changing the fraction denominator to the number of months employed under the plan *at the time of divorce. Id.* (emphasis added); *see also Shanks, 110 S.W.3d at 447 n.3 (Tex. 2003)* (recognizing that the formula was altered). *Berry* also altered the [**11] valuation portion of the formula, requiring the value of the benefits to be calculated at the date of divorce. *Shanks, 110 S.W.3d at 447 n.3.* Thus, the *Berry* formula prevents a [*286] divorce court from awarding to the non-employee spouse any portion of a post-divorce increase in retirement benefits that would invade the employee spouse's separate property, such as post-divorce raises, promotions, services rendered, or contributions. *See Berry, 647 S.W.2d at 947* (holding post-divorce increases attributable to pay raises and union-contract negotiations for an improved benefit plan are not part of the parties' estate subject to division on divorce); *Stavinoha v. Stavinoha, 126 S.W.3d 604, 610 (Tex. App.--Houston [14th Dist.] 2004, no pet.)* (citing *Berry*). However, a divorce court may award the non-employee spouse her share of any post-divorce cost-of-living increase in the retirement benefit. *Limbaugh v. Limbaugh, 71 S.W.3d 1, 16 n.12 (Tex. App.--Waco 2002, no pet.).*

Here, Husband was not retired as of the date of divorce. The DRO states that: "Member was on active duty with the U.S. Air Force at the time this Order was entered." The fraction used to calculate Wife's community interest in Husband's [**12] retired pay should follow the *Berry* formula. Therefore, the applicable fraction is the number of months Husband and Wife were married during Husband's employment under the retirement plan divided by the number of months Husband was employed under the retirement plan at the time of divorce. We sustain the portion of Husband's first issue dealing with the calculation of the community interest in retired pay found in the DRO. We reverse and remand for the trial court to adjust the formula in the

DRO to be consistent with Texas law.

*Calculation of Retirement Pay*

Husband also contends that the formula does not accurately calculate the retired pay itself. The DRO uses the following fraction to calculate Husband's retired pay: Active duty base pay for an 0-6 with 26+ years of creditable service as of 01/01/2010 ($10,047.00 per month) divided by Husband's active duty base pay as of his date of retirement. Husband argues that both the numerator and denominator of this fraction are incorrect.

The computation of retired pay involves factors such as: (1) the percentage of pay base that a service member accrues toward retirement for every creditable complete year and month of service; (2) the service [**13] member's pay grade; and (3) the service member's pay base at the service member's pay grade and longevity at the time of the divorce or at the time of retirement, whichever is applicable. *See Caracciolo v. Caracciolo, 251 S.W.3d 568, 572 (Tex. App.--San Antonio 2007, no pet.).* Computation of retired pay for members of the armed forces is found in chapter 71 of title 10 of the United States Code. *See 10 U.S.C.A. §§ 1401* (computation of retired pay), *1405* (years of service), *1406* (retired pay base for members who first became members before September 8, 1980: final basic pay), *1407* (retired pay base for members who first became members after September 7, 1980: high-36 month average), *1409* (retired pay multiplier); *see also id. § 8991* (computation of retired pay for member of the Air Force).

Husband claims that his retired pay base should be calculated using *section 1407* rather than *section 1406* of the United States Code because he first became a member of a uniformed service after September 7, 1980. The DRO appears to calculate Husband's retired pay base under *section 1406* (retired pay base for members who first became members before September 8, 1980) because the fraction's numerator [**14] uses Husband's monthly basic pay at Husband's pay grade. *See id. § 1406.* Under *section 1407*, the high-36 month average is used to calculate the [*287] retired pay base for those who first became members of a uniformed service after September 7, 1980.[6] *Id. § 1407.* "High-36 month average" means "the total amount of monthly basic pay to which the member was entitled for the 36 months (whether or not consecutive) out of all the months of active service of the member for which the monthly basic pay to which the

member was entitled was the highest, divided by 36." *Id.* § *1407(c)*. Therefore, evidence of when Husband began uniformed service is essential to Husband's argument that the "high 36" formula should be used to calculate his retired pay base. The existing formula in the DRO references "26+ years of creditable service as of 01/01/2010." This reference indicates that Husband had 26 years and some months of creditable service in the military as of 01/01/2010.[7] Based on the reference in the DRO to "26+ years of creditable service as of 01/01/2010," Husband must have begun military service after September 7, 1980, and, therefore, the high-36 month average will be used to calculate his retired pay [**15] base. *See id.* § *1407*.

> 6 There is an exception for enlisted members reduced in grade and officers who do not serve satisfactorily in the highest grade held by the officer. *Id.* § *1407(f)*. In that case, *section 1406* applies. *Id.* § *1407(f)(1)*. There is nothing in the record to suggest that Husband falls into this exception, thereby triggering *section 1406*.
>
> 7 To determine a member's years of service, "each full month of service that is in addition to the number of full years of service creditable to the member shall be credited as 1/12 of a year; and any remaining fractional part of a month shall be disregarded." *Id.* § *1405*.

Husband further argues that for purposes of division of his military retirement benefits upon divorce, the high-36 month average should be calculated as of the date of divorce, rather than the date of retirement. We agree. *See Grier v. Grier, 731 S.W.2d 931, 932 (Tex. 1987)* (holding that "in apportioning military retirement benefits upon the dissolution of a marriage, the valuation of the community's interest in such benefits is to be based on the retirement pay which corresponds to the rank actually held by the service spouse on the date of the divorce"); *Caracciolo, 251 S.W.3d at 572* [**16] (husband testified that "high 36" plan was only retirement option and calculated "high 36" based on average base pay during 36 months preceding divorce).

Husband also contends that the denominator of this fraction (bottom fraction above) should be Husband's "gross retired pay on the date of his retirement" rather than "active duty base pay of Member as of his date of retirement." We agree that Wife is entitled to a percentage of Husband's disposable *retired* pay.

Therefore, we sustain the portion of Husband's first issue dealing with the calculation of the retired pay itself found in the DRO. We reverse and remand for the trial court to adjust the formula in the DRO to be consistent with federal and state law.

*Wife's Beneficiary Status*

Finally, Husband argues that the DRO is inconsistent with the agreed divorce decree in that the DRO provides that "[f]ormer Spouse shall be deemed to be the beneficiary of the Survivor Benefit Plan ("SBP") annuity through Member's military retirement and Member shall execute any documents as are required to make the designation of Former Spouse as said beneficiary." The agreed divorce decree does not specifically divide the SBP annuity or mention Wife's status [**17] as a former spouse beneficiary to the SBP annuity.[8]

> 8 The divorce decree does make one reference to survivor benefits. Under the heading "Support as Obligation of Estate," the trial court ordered that the provisions of child support in the decree remained the obligation of Husband's estate and did not terminate on his death. The decree states that "[p]ayments received for the benefit of the children including payments from the Social Security Administration, Department of Veterans Affairs or other governmental agency or life insurance proceeds, annuity payments, trust distributions, or *retirement survivor benefits,* shall be a credit against this obligation." (Emphasis added).
>
> The divorce decree orders Husband to purchase life insurance and name Wife as primary beneficiary for the benefit of the children as additional child support, but there is no indication that the life insurance is a reference to the SBP annuity. The decree states that Husband must maintain the life insurance policy in full force and effect as long as child support is payable under the terms of the decree.

[*288] Under federal law, a member of the armed forces (1) who is entitled to retired pay or (2) who would be eligible [**18] for reserve-component retired pay except for the fact that he is under 60 years old is eligible to participate in the SBP. *10 U.S.C.A.* § *1448(a)(1)(A)-(B)*. The SBP applies to eligible service members who are married or have a dependent child

when they become entitled to retired pay or eligible for reserve-component retired pay. *Id.* § *1448(a)(2)(A)-(B)*. The eligible service member may elect to provide an annuity to a former spouse payable upon the member's death. *Id.* §§ *1448(b)(2)-(3), 1450*. Assuming that the statute applies to Husband,[9] he must, at the time of making the election, provide "the Secretary concerned with a written statement" setting forth whether the election is being made pursuant to court order or pursuant to a voluntary written agreement as part of, or incident to, a divorce proceeding and, if so, whether the voluntary written agreement has been incorporated in, or ratified or approved by, a court order. *Id.* § *1448(b)(5)*. A court order means "a court's final decree of divorce, dissolution, or annulment or a court ordered, ratified, or approved property settlement incident to such a decree . . . ." *Id.* § *1447(13)*.

> 9 "A person who has a former spouse upon becoming eligible [**19] to participate in the Plan may elect to provide an annuity to that former spouse." *Id.* § *1448(b)(2)(A)*. In addition, "[a] person who is a participant in the Plan and is providing coverage for a spouse or a spouse and child (even though there is no beneficiary currently eligible for such coverage), and who has a former spouse who was not that person's former spouse when that person became eligible to participate in the Plan, may [subject to limitation] elect to provide an annuity to that former spouse." *Id.* § *1448(b)(3)(A)(i)(I)-(II)*.

Here, the agreed divorce decree does not require Husband to name Wife as a former spouse beneficiary to an SBP annuity.[10] Because the DRO is not part of the parties' agreement and it imposes an additional obligation not included in the agreed divorce decree, the trial court erred by including this obligation in the DRO. We sustain this portion of Husband's first issue. We reverse and remand for the trial court to remove the reference to Wife's status as former spouse beneficiary of Husband's SBP in the DRO.

> 10 The informal settlement agreement does not specifically address the SBP either.

To summarize, we reverse the DRO for the reasons stated and remand to [**20] the trial court for further proceedings. Because of our disposition of this issue, we need not address Husband's contention that the trial court abused its discretion by excluding Husband's expert

testimony at the hearing on the motion to correct or reform the judgment. *See Tex. R. App. P. 47.1*.

## B. FINAL DECREE OF DIVORCE

In his second issue, Husband contends that the trial court erred by allowing reference [*289] to the DRO to be stricken from the divorce decree.

A party cannot appeal from a judgment to which he has consented or agreed unless there is an allegation and proof of fraud, collusion, or misrepresentation. *Boufaissal v. Boufaissal, 251 S.W.3d 160, 161-62 (Tex. App.--Dallas 2008, no pet.)*. Husband attested by his signature that he approved and consented to the divorce decree as to both form and substance. In the body of the decree, the trial court found that the parties had entered into a written agreement as contained in the decree and, to the extent permitted by law, the parties stipulated that the agreement was enforceable as a contract. Despite this fact, Husband argues that he did not agree to the deletion of the language "as awarded in a Domestic Relations Order" in section W-6 [**21] of the decree because his attorney did not initial this deletion. This argument is without merit. Although it is true that only Wife's attorney's initials are listed next to the deletion in section W-6, the same deleted reference appears in the corresponding H-6; Husband does not complain about the same deletion here even though only Wife's initials and her attorney's initials appear next to it.[11]

> 11 W-6 awards Wife a 50 percent portion of the community sums as a result of Husband's past or present employment. H-6 awards Husband all sums as a result of Husband's past, present, or future employment, except that portion awarded to Wife in the decree.

Because Husband consented to the decree and has not made an allegation of fraud, collusion, or misrepresentation, we overrule Husband's second issue.

## C. ATTORNEY'S FEES

In his third issue, Husband argues that the trial court abused its discretion by awarding sanctions against him for filing a motion to correct or reform the judgment.

In her response to the motion to correct or reform the judgment, Wife contends that the motion is groundless and brought for the purpose of harassment. Wife requests

reasonable attorney's fees, expenses, and costs [**22] through trial and appeal or, in the alternative, reasonable attorney's fees, expenses, and costs through trial and appeal taxed as costs. Wife filed a separate motion for sanctions pursuant to *Texas Rule of Civil Procedure 13* in which she contends that the motion to correct or reform judgment is groundless and brought for the purpose of harassment. Wife requests reasonable expenses, including reasonable attorney's fees, incurred in obtaining an order for sanctions. At the hearing on the motion to correct or reform judgment, Wife agreed to pass on her motion for sanctions and proceed with the attorney's fees requested in her response to Husband's motion. The trial court awarded Wife her attorney's fees in the amount of $1,500 and expenses in the amount of $450 for a total amount of $1,950.

Husband's only contention on appeal is that the trial court erred in awarding attorney's fees as sanctions. However, the trial court's order does not state that it is awarding the attorney's fees as sanctions. Likewise, the exchange between the trial court and the attorneys at the hearing on the motion to correct or reform the judgment indicates that the attorney's fees were not awarded as sanctions.

THE [**23] COURT: We're dealing with a motion and your response.

WIFE'S COUNSEL: That would be my --

THE COURT: Let me see yours. She's asking for attorney fees, expenses and costs. You want to respond to that, her response, since we're not going forward [*290] on her sanctions, she's going on the response.

HUSBAND'S COUNSEL: Well, Your Honor, the only --

THE COURT: Do you want to cross-examine her on anything?

HUSBAND'S COUNSEL: No, Your Honor, I got notice of 1500.

THE COURT: That's in her sanctions, Counsel.

HUSBAND'S COUNSEL: That's in her sanctions motion.

THE COURT: And that's not before the Court, she's not going on that. She's going on her response to your motion to correct or reform.

HUSBAND'S COUNSEL: Okay. So these--these are not going to be sanctions, they're going to be attorney's fees for what purpose?

WIFE'S COUNSEL: I'll dismiss my motion for sanctions if you award the fees today. Obviously, it's not necessary to do that. It's not set until sometime in July anyway.

Husband's only argument on appeal is that the trial court erred in awarding Wife's attorney's fees and expenses as sanctions. Because the record does not reflect his interpretation of the proceedings, his argument is without merit.

Therefore, [**24] we overrule Husband's third issue.

### III. CONCLUSION

We affirm the final decree of divorce and the award of attorney's fees and expenses in the order denying the motion to correct or reform judgment. We reverse and remand the domestic relations order for further proceedings consistent with this opinion.

/s/ Adele Hedges

Chief Justice



Douglas Wayne JOYNER, Appellant v. Janelle Marie JOYNER, Appellee

No. 04-10-00563-CV

COURT OF APPEALS OF TEXAS, FOURTH DISTRICT, SAN ANTONIO

*352 S.W.3d 746; 2011 Tex. App. LEXIS 6731*

August 24, 2011, Delivered
August 24, 2011, Filed

**SUBSEQUENT HISTORY:** Released for Publication December 9, 2011.

**PRIOR HISTORY:** [**1]
From the 408th Judicial District Court, Bexar County, Texas. Trial Court No. 2008-CI-21331. Honorable David A. Berchelmann, Jr., Judge Presiding.
*Joyner v. Joyner*, 2011 Tex. App. LEXIS 2516 (Tex. App. San Antonio, Apr. 6, 2011)

**DISPOSITION:** REVERSED & RENDERED.

**COUNSEL:** For APPELLANT: William Douglas Bincham, Law Offices Of William Douglas Bincham, San Antonio, TX.

For APPELLEE: Michael D. Bowles, Attorney At Law, San Antonio, TX.

**JUDGES:** Opinion by: Rebecca Simmons, Justice. Sitting: Sandee Bryan Marion, Justice, Rebecca Simmons, Justice, Steven C. Hilbig, Justice.

**OPINION BY:** Rebecca Simmons

**OPINION**

[*747] REVERSED & RENDERED

Appellant Douglas (Doug) Wayne Joyner's motion for rehearing is granted. We withdraw our opinion and judgment of April 6, 2011, and substitute this opinion and judgment.

Doug appeals the trial court's order denying his petition for bill of review to set aside an agreed amended domestic relations order in a suit to clarify his and Appellee Janelle Marie Joyner's divorce decree and attendant domestic relations order.[1] In his petition, Doug asserted that the trial court lacked jurisdiction to enter the order because it impermissibly modified the substantive division of his military retirement benefits. The trial court denied Doug's petition for bill of review. We reverse the trial court's order denying the [**2] bill of review and vacate the Amended Domestic Relations Order.

> 1   Doug died prior to this appeal. The Notice of Appeal in this case was filed in Doug's name by Stephanie Joyner, Doug's surviving spouse. Janelle argues that there is no showing that Stephanie has authority to prosecute this appeal. "If a party to a civil case dies after the trial court renders judgment but before the case has been finally disposed of on appeal, the appeal may be perfected, and [we] will proceed to adjudicate the appeal as if all parties were alive." *TEX. R. APP. P. 7.1(a)(1)*.

**BACKGROUND**

Doug and Janelle were divorced in October 2001.

The divorce decree awarded Janelle a portion of Doug's military retirement benefits and stated that her portion would be "more particularly defined in a [*748] Domestic Relations Order." The court subsequently entered a Domestic Relations Order (the DRO) awarding Janelle 50% of the community share of Doug's hypothetical retired pay, adjusted for cost of living adjustments.[2] After Doug retired from active service in December 2005, the Department of Finance and Accounting Services (DFAS) mistakenly began paying Janelle 50% of Doug's actual disposable retired pay, an amount that was much [**3] higher than what she was awarded in the divorce.

> 2    The divorce decree described Doug's hypothetical retired pay as "[t]he disposable monthly retired pay of an E-7 with 16 years, 3 months of accrued creditable military service at date of divorce."

Doug, who was living in Arizona at that time, retained local counsel to correct the mistake. Doug's attorney filed a motion to clarify the DRO. In July 2006, DFAS sent a letter to Doug and Janelle acknowledging that it had overpaid Janelle for six months. DFAS also stated that it had established a debt against Janelle's future payments and credited the amount of her debt to Doug. In August 2006, the parties entered into a Rule 11 agreement (the Agreement)[3] in which the parties agreed to the entry of an amended domestic relations order that was similar to the original DRO but provided that Janelle's interest was 37% of Doug's disposable retired pay. In February 2007, the court signed an Amended Domestic Relations Order (the Amended DRO) incorporating the terms of the Agreement.

> 3    The Agreement was signed by the judge, Janelle, Janelle's attorney, and Doug's attorney, but not Doug.

In March 2007, Doug's attorney moved for a new trial because the Amended [**4] DRO did not address Doug's DFAS credit and impermissibly changed the terms of the divorce decree. The trial court granted the motion on the condition that Doug pay $1,200 for Janelle's attorney's fees by June 7, 2007. The order stated that "if the attorney's fee payment condition herein is not timely met, the Motion for New Trial is denied." Doug's counsel thereafter withdrew, and Doug alleged that he was never aware of the conditional motion for new trial. When Janelle's attorney's fees were not timely paid, the

trial court signed an order on June 22, 2007, denying the motion for new trial.

Doug retained new counsel and filed a petition for bill of review in December 2008 attacking the jurisdiction of the trial court to modify the property division in the DRO and divorce decree. After a preliminary hearing, the trial court denied Doug's petition because Doug did not establish the elements of a bill of review: that another party, through fraud or accident, prevented him from asserting a meritorious defense. *See Eastin v. Dial, 288 S.W.3d 491, 497 (Tex. App.--San Antonio 2009, pet. denied).* The trial court also found that Doug was at fault or negligent by failing to pursue other legal [**5] remedies. Doug's appeal followed.

## BILL OF REVIEW

The trial court denied Doug's petition for bill of review because he failed to satisfy the formal requirements for a bill of review. Doug argues that if the record reveals that the trial court lacked jurisdiction to enter the Amended DRO, he need not meet the formal requirements for a bill of review. We agree. If a direct attack seeks to set aside a judgment because the trial court lacked subject matter jurisdiction, the petitioner need not satisfy the formal bill of review requirements for the court to consider the jurisdictional challenge. *Sweetwater Austin Props. L.L.C. v.* [*749] *SOS Alliance, Inc., 299 S.W.3d 879, 889 (Tex. App.--Austin 2009, pet. denied); see also Middleton v. Murff, 689 S.W.2d 212, 213 (Tex. 1985)* (per curiam) (op. on motion for reh'g). We, therefore, turn to the question of whether the court lacked jurisdiction to enter the Amended DRO.

## JURISDICTION

Doug argues that the Amended DRO is void because it modifies the substantive division of property from the divorce decree and DRO, which provided an unambiguous award to Janelle of Doug's military retirement benefits.

### A. Standard of Review & Applicable Law

Whether a trial court [**6] has jurisdiction is a question of law that we review de novo. *Tex. Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002); Guevara v. H.E. Butt Grocery Co., 82 S.W.3d 550, 551 (Tex. App.--San Antonio 2002, pet. denied).* The issue of jurisdiction in this case turns on

whether the trial court modified or clarified the DRO when it entered the Amended DRO.

Any party affected by a divorce decree may seek to enforce the decree by filing an enforcement action. *TEX. FAM. CODE ANN. § 9.001(a)* (West 2006). The trial court that rendered the divorce decree generally retains the power to enforce or clarify the property division approved of or contained in the decree. *Id. §§ 9.002, 9.006(a), 9.008*. If a court finds that the original form of the division of property is ambiguous or not specific enough to be enforceable by contempt, the court may enter a clarifying order to enforce compliance with the original division of the property. *Id. § 9.008(b)*. However, "[a]n order . . . that amends, modifies, alters, or changes the actual, substantive division of property made or approved in a final decree of divorce . . . is beyond the power of the divorce court and is unenforceable." *Id.* [**7] *§ 9.007(b); see also Pearcy v. Pearcy, 884 S.W.2d 512, 514 (Tex. App.--San Antonio 1994, no writ)*.

When interpreting a divorce decree, courts should construe the decree "as a whole to harmonize and give

effect to the entire decree." *Shanks v. Treadway, 110 S.W.3d 444, 447 (Tex. 2003)*. "'[I]f the decree, when read as a whole, is unambiguous as to the property's disposition, the court must effectuate the order in light of the literal language used.'" *Id.* (quoting *Wilde v. Murchie, 949 S.W.2d 331, 332 (Tex. 1997)* (per curiam)). However, if the decree is subject to more than one reasonable interpretation and is therefore ambiguous, courts should apply the construction that correctly applies the law. *Id.* "[W]hether a divorce decree is ambiguous is a question of law." *Id.*

**B. Discussion**

Doug and Janelle's divorce decree provides that Janelle is entitled to "[a] portion of [Doug]'s benefits in the military pension plan arising out of [Doug's] employment with the military, that portion being 50% of the community interest and more particularly defined in a Domestic Relations Order." The DRO formulated Janelle's entitlement as follows[4]:

| | | 195 months | | The disposable monthly |
|---|---|---|---|---|
| | | Total Creditable | | retired pay of an E-7 with |
| 1/2 | x | Months of Military | x | 16 years, 3 months of |
| | | Service For/Toward | | accrued creditable |
| | | Retirement, at Time of | | military service at date of |
| | | Retirement | | divorce. |

[*750] It [**8] also provided that she was entitled to a share, attributable to the community interest, of any cost of living adjustments. The parties do not dispute that Doug retired from active military service in December 2005, after 275 creditable months of military service, and started receiving retirement pay the following month. Under the DRO, Janelle therefore was entitled to 35.4545% of $1,215, Doug's adjusted hypothetical retired pay. The Amended DRO, however, entitles Janelle to 37% of the $2,206 in disposable retired pay that Doug was entitled to as of the date of his retirement.[5] Janelle's award of Doug's military retirement benefits under the DRO is not ambiguous because it is expressed with mathematical certainty. *See Caracciolo v. Caracciolo,*

*251 S.W.3d 568, 572-73 (Tex. App.--San Antonio 2007, no pet.)* (upholding substantially similar language describing a legally correct formula); *see also Berry v. Berry, 647 S.W.2d 945, 947 (Tex. 1983)* (approving an almost-identical formula for determining the non-employee spouse's community-property award). Therefore, the trial court was without jurisdiction to modify the formula. *See TEX. FAM. CODE ANN. § 9.007(b); Pearcy, 884 S.W.2d at 514*.

4    From [**9] left to right, the first operand represents Janelle's half interest in the community property; the second represents the community share of Doug's retirement benefits; and the third represents Doug's hypothetical retired pay.

5   It is undisputed that Doug's disposable retired pay in 2006 was $2,206. According to the formula in the original DRO. Janelle was entitled to only 19.5272% of the disposable retired pay that Doug was entitled to as of the date of his retirement.

Janelle argues that this case is distinguishable from the authority Doug relies upon because Doug entered into an enforceable Rule 11 agreement to increase Janelle's award in exchange for other consideration. Moreover, it is undisputed that it was Doug, not Janelle, who sought clarification of the DRO. In effect, Doug is now appealing the modification that he initially sought and then agreed to nearly four years ago. Although we acknowledge that these facts appear unfair and create a waste of judicial resources, the legislature has determined that the trial court is without power to modify an unambiguous property division contained in a divorce decree.[6] *See TEX. FAM. CODE ANN. § 9.007(b)* (providing that modification of [\*\*10] property division in divorce decree is outside the power of the divorce court); *Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444-45 (Tex. 1993)* (holding that subject matter jurisdiction cannot be waived); *In re A.D.D., 974 S.W.2d 299, 303 (Tex. App.--San Antonio 1998, no pet.)* (explaining that subject matter jurisdiction cannot be conferred by consent or waiver); *see also Metzger v. Metzger, No. 01-04-00893-CV, 2007 Tex. App. LEXIS 4487, 2007 WL 1633445, at \*6-7 (Tex. App.--Houston [1st Dist.] June 7, 2007, pet. denied)* (mem. op.) (holding that the parties' agreement did not give the court jurisdiction in a clarification suit to modify an unambiguous divorce decree to reflect the parties' agreement).

6   Our opinion should not be construed as affecting any contractual rights that either Janelle or Doug might have under the Rule 11 agreement. *See Metzger, 2007 Tex. App. LEXIS 4487, 2007 WL 163345, at \*7.*

## CONCLUSION

The trial court lacked jurisdiction to modify the DRO and enter the Amended DRO. Therefore, Doug did not need to comply with the bill of review requirements to challenge subject matter jurisdiction, and the trial court erred in denying the bill of review. More importantly, we [\*751] grant the relief the trial court should have [\*\*11] granted and vacate the Amended DRO.

Rebecca Simmons, Justice



## GEORGE PAYTON SHANKS, PETITIONER v. KENDA CAROLYN (SHANKS) TREADWAY, RESPONDENT

### NO. 00-1325

### SUPREME COURT OF TEXAS

*110 S.W.3d 444; 2003 Tex. LEXIS 87; 46 Tex. Sup. J. 840*

**April 24, 2002, Argued**
**June 26, 2003, Delivered**

**PRIOR HISTORY:** [**1] ON PETITION FOR REVIEW FROM THE COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS.
*Treadway v. Shanks, 110 S.W.3d 1, 2000 Tex. App. LEXIS 7945 (Tex. App. Dallas, Nov. 17, 2000)*

**DISPOSITION:** Affirmed.

**JUDGES:** JUSTICE O'NEILL delivered the opinion of the Court.

**OPINION BY:** Harriet O'Neill

**OPINION**

[*444] The issue in this case is the proper interpretation of a 1981 divorce decree that divided, among other assets, retirement benefits stemming from one spouse's employment both during and after the marriage. The trial court held that the [*445] divorce decree awarded the non-employee spouse a specific percentage of the retirement benefits valued at the date of divorce. The court of appeals reversed, concluding that the decree unambiguously awarded the non-employee spouse a percentage of the total amount of the benefits on the date of retirement. *110 S.W.3d 1, 2000 Tex. App. LEXIS 7945.* We hold that the court of appeals correctly interpreted the decree. Accordingly, we affirm the court of appeals' judgment.

**I. Background**

Kenda Carolyn Treadway and George Payton Shanks married in 1962. George started working for American Airlines in 1966 and began participating in American's retirement program the following year. The program included both a defined [**2] benefit plan and a defined contribution plan. [1] George continued to work for American until his retirement in 1998.

> 1 Generally, an employee participating in a defined benefit plan will receive a future benefit based on a specified formula that often takes into account earnings, length of service, or both. Brown, Comment, *An Interdisciplinary Analysis of the Division of Pension Benefits in Divorce and Post-Judgment Partition Actions: Cures for the Inequities in Berry v. Berry,* 37 BAYLOR L. REV. 107, 115-16 (1985). A defined contribution plan, on the other hand, is funded by contributions of a specified amount that are invested or placed in a trust fund, and the employee is entitled upon retirement to those contributions plus the earnings thereon. *Id.* at 113.

George and Kenda divorced in 1981. In the divorce decree, the district court awarded Kenda a twenty-five percent interest in George's retirement benefits, and neither party appealed the judgment. The relevant portions of [**3] the decree provide:

The Court finds that [George] has earned certain employee benefits under a pension plan arising out of past employment as an employee of American Airlines.

[Kenda] is awarded a "pro-rata interest" (as hereinafter defined) of any and all sums received or paid to [George] from such pension plan and such sum or sums shall be payable to [Kenda] if, as and when paid by American Airlines or the trustee of such plan to [George] as pension or retirement employee benefits existing because of [George's] employment.

IT IS DECREED that [Kenda's] "pro-rata interest" shall be defined as that sum of money equal to 25% of the total sum or sums paid or to be paid to [George] from such pension or retirement plan.

. . . .

IT IS FURTHER DECREED that all remaining right, title and interest in and to such American Airlines pension and/or retirement plan shall be and is hereby set aside to [George].

On March 9, 1998, approximately two months before his scheduled retirement date, George filed a Motion to Sign Qualified Domestic Relations Order ("QDRO"). See TEX. FAM. CODE § 9.102. In his motion, George proposed that the court calculate [**4] the value of both the defined benefit and defined contribution plans as of the date of divorce in awarding Kenda her twenty-five percent interest. In response, Kenda asserted that *res judicata* barred the attempted collateral attack. She requested that the district court sign her proposed QDRO, awarding her twenty-five percent of the total amount of the benefits to be paid to George.

The district court signed two QDROs - George's QDRO dividing the defined benefit plan valued at the date of divorce *and* Kenda's QDRO dividing both plans valued as of the date that George actually received [*446] payment. In light of the inconsistent orders, George moved for reconsideration. The court granted George's motion, vacated Kenda's QDRO, and entered another QDRO valuing the defined contribution plan at the date of divorce. Kenda appealed.

The court of appeals reversed the judgment, concluding that the trial court's QDROs impermissibly altered the substantive division of property made in the original divorce decree. *110 S.W.3d at 3, 2000 Tex. App.*

*LEXIS 7945*. The court held that the divorce decree unambiguously awarded Kenda "a twenty-five percent interest of the *total* sum or sums paid or to be paid' from [George's] [**5] pension plans and [did] not limit her award to a percentage of the benefits accrued in the plans prior to the divorce." *Id. at 6, 2000 Tex. App. LEXIS 7945 at *11.* The court therefore remanded the case to the district court to enter a revised QDRO awarding Kenda a twenty-five percent interest in the entire amount to be paid to George as retirement benefits. We agree with the appellate court's interpretation of the decree and therefore affirm the court of appeals' judgment.

## II. Dividing Retirement Benefits

We begin with an overview of the law that was in effect in this area at the time the decree was entered to demonstrate the complexities involved in dividing retirement benefits upon divorce. Our decisions focused first on the recognition of pension interests as community property rights and then on the separate issues of apportionment and valuation of benefits. In *Cearley v. Cearley*, we considered whether future pension benefits constitute community property rights subject to equitable division upon divorce. *544 S.W.2d 661, 663-64, 20 Tex. Sup. Ct. J. 102 (Tex. 1976).* We approved of the proposition that even "nonvested [2] pension rights are . . . a contingent interest in property," and "to the extent that [**6] such rights derive from employment during coverture, they comprise a community asset subject to division in a dissolution proceeding." *Id.* (quoting *Brown v. Brown, 15 Cal. 3d 838, 126 Cal. Rptr. 633, 544 P.2d 561, 562 (Cal. 1976)).* We also discussed the difficulty of computing the present value of such a contingent interest and approved the method of making the award of the non-employee spouse's community interest "effective if, as, and when the benefits are received by the [employee] spouse." *544 S.W.2d at 666.*

> 2 Pension plan benefits become vested when the employee has an unconditional ownership interest in them; that is, the employee has the right to receive the accrued benefits upon retirement whether or not he is working for the same employer. Brown, 37 BAYLOR L. REV. at 119. In contrast, pension benefits are "matured" when the employee is entitled to "immediate collection and enjoyment." *Id.*

The 1983 case *Berry v. Berry, 647 S.W.2d 945, 26 Tex. Sup. Ct. J. 266 (Tex. 1983),* currently governs the

division of retirement [**7] benefits. However, when the decree in question was entered in 1981, *Cearley* and *Taggart v. Taggart, 552 S.W.2d 422, 20 Tex. Sup. Ct. J. 334 (Tex. 1977)*, provided trial courts the formula to use in determining the community interest in retirement benefits and the non-employee spouse's share of that interest. The Court used a fraction to apportion the community interest: the number of months married under the plan divided by the total number of months employed under the plan at the time of retirement. *Taggart, 552 S.W.2d at 424.* That fraction was multiplied by the non-employee spouse's "just and right" share in the community interest as determined by the trial court (often fifty percent) and then multiplied by the value of the benefits received by the employee spouse at retirement. *Id.* [3] When the trial [*447] court entered George and Kenda's divorce decree, it should have employed the *Taggart* formula to divide the retirement benefits, though of course the court would not have been able to insert numbers for the denominator of the community interest fraction or the value of the benefits, which could not be determined until retirement.

> 3   The *Berry* decision altered this formula. *647 S.W.2d at 947.* Although the Court in *Berry* expressly declined to overrule *Taggart* with regard to the apportionment fraction, it nevertheless effected a change in the fraction's denominator to the number of months employed under the plan at the time of divorce. *Id.; see also Grier v. Grier, 731 S.W.2d 931, 932, 30 Tex. Sup. Ct. J. 416 (Tex. 1987). Berry* altered the valuation portion of the formula as well, requiring the value of the benefits to be calculated at the date of divorce to avoid invading the employee spouse's separate property. *647 S.W.2d at 947.* It should be noted that serious concerns have been raised regarding the *Berry* formula's failure to account for post-divorce increases in the value of retirement benefits attributable to community property contributions to the plan. Brown, 37 BAYLOR L. REV. at 152-62. In addition, the problems associated with valuing benefits differ depending on the type of plan being divided. *Id.* at 112-17, 152-62 (discussing the differences between defined benefit plans and defined contribution plans). However, the facts of the case currently before the Court do not provide us the opportunity to address those concerns in this opinion.

## [**8] III. Interpreting the Divorce Decree

Notwithstanding the state of the law at the time the divorce decree was entered, this case does not involve a direct appeal, and we must interpret the decree to determine not what the trial court should have done but, if possible, what the court actually did. When interpreting a divorce decree, courts apply the general rules regarding construction of judgments. *Wilde v. Murchie, 949 S.W.2d 331, 332, 40 Tex. Sup. Ct. J. 910 (Tex. 1997)* (per curiam) (citing *Constance v. Constance, 544 S.W.2d 659, 660, 20 Tex. Sup. Ct. J. 106 (Tex. 1976)).* Judgments should be construed as a whole to harmonize and give effect to the entire decree. *Constance, 544 S.W.2d at 660.* "If the decree, when read as a whole, is unambiguous as to the property's disposition, the court must effectuate the order in light of the literal language used." *Wilde, 949 S.W.2d at 332; see also Baxter v. Ruddle, 794 S.W.2d 761, 763, 33 Tex. Sup. Ct. J. 687 (Tex. 1990).* If the decree is ambiguous, the court should review the record along with the decree to aid in interpreting the judgment. *Wilde, 949 S.W.2d at 332.* In addition, if a judgment is ambiguous [**9] - that is, subject to more than one reasonable interpretation - courts should adopt the construction that correctly applies the law. *MacGregor v. Rich, 941 S.W.2d 74, 75, 40 Tex. Sup. Ct. J. 298 (Tex. 1997)* (per curiam). As with other written instruments, whether a divorce decree is ambiguous is a question of law. *Coker v. Coker, 650 S.W.2d 391, 394, 26 Tex. Sup. Ct. J. 368 (Tex. 1983).*

The decree in question identifies George's pension plan as "arising out of past employment," but then states that Kenda is entitled to "a 'pro rata interest' . . . of any and all sums received or paid to [George] from such pension plan . . . ." The decree also defines "pro rata interest" as "25% of the total sum or sums paid or to be paid to [George] from such pension or retirement plan." The decree does not set out a specific *Taggart*-like formula to be used in calculating Kenda's interest.

The court of appeals concluded, and we agree, that the decree is unambiguous, and Kenda should receive twenty-five percent of George's total retirement benefits. The phrase "arising out of *past* employment as an employee of American Airlines" (emphasis added) does not render the decree ambiguous, as George argues; rather, [**10] it merely serves to identify more specifically the property that is being divided (i.e., George's retirement plan). [4] [*448] As noted by the court of appeals, the trial court awarded Kenda an interest

of all sums received under such *plan*, not an interest of presently accrued benefits under such plan. *110 S.W.3d at 6, 2000 Tex. App. LEXIS 7945*. And the plan that was in existence at the time of the divorce and referred to in the decree is the same plan in effect now that George has retired. The fact that the plan's value may have increased since the divorce does not affect the decree's plain language, which simply cannot reasonably be construed to award Kenda an interest only in the plan benefits that had accrued on the date of divorce. Whether intentional or not, the court that entered the decree failed to limit the community interest pursuant to the *Taggart* apportionment fraction and instead clearly gave Kenda a twenty-five percent interest in the *total* amount (whatever that might be) to be paid to George under the plan.

> 4 Although George's retirement benefits include both a defined benefit plan and a defined contribution plan, the decree referred to them as a single plan. Because this is not a direct appeal, it is unnecessary to address at length the myriad differences between the two types of plans. Nevertheless, trial courts should take into serious consideration the kind of plan at issue when dividing and valuing retirement benefits. *See supra* note 3; Brown, 37 BAYLOR L. REV. at 134-36, 156-62.

[**11] Viewing the division of the plan benefits in light of the decree as a whole, the fact that the court awarded Kenda only a twenty-five percent interest in the plan also supports our interpretation. Trial judges must carefully review all community assets in making a "just and right" division of those assets, and the retirement benefits were one of the assets considered in this case. *See Busby v. Busby, 457 S.W.2d 551, 555, 13 Tex. Sup. Ct. J. 485 (Tex. 1970)*. Given the complexities involved in dividing this type of asset, perhaps the trial court intended to achieve an overall just and right division by awarding Kenda a lesser interest in the total value of the plan at retirement rather than a greater interest in a smaller portion of the benefits. We simply cannot know with certainty because the decree was never appealed. In any event, our responsibility is to construe the decree as written.

It is true, as George points out, that Texas law prohibits courts from divesting spouses of their separate property. *Eggemeyer v. Eggemeyer, 554 S.W.2d 137, 139-40, 20 Tex. Sup. Ct. J. 308 (Tex. 1977)*. But George

therefore urges us to interpret the decree to award Kenda an interest in only the community portion [**12] of the plan to avoid attributing to the trial court an intent to divide separate property, which it lacked authority to do. That argument is flawed in two respects. First, it overlooks the fact that applying *Taggart*, which was the controlling law at the time the decree was entered and required benefits to be valued at the time of their disbursement, would probably divest George of a portion of his separate property anyway. In fact, the reason the Court altered the requisite formula in *Berry* was to avoid invading a spouse's separate property. *See supra* note 3; *Berry, 647 S.W.2d at 947*. [5] This tension demonstrates the difficulty inherent in dividing pension plans that involve both separate and community property and indicates that interpreting such a division is not as simple as presuming a lack of intent to divide separate property. [6]

> 5 We reiterate that even after *Berry* was decided, concerns about invading separate property remained. Brown, 37 BAYLOR L. REV. at 152-62.
> 6 We recognize the importance of safeguarding individual property rights, but significantly, it was not until 1977 in *Eggemeyer* that this Court expressly and unequivocally held that a court cannot divest a spouse of his or her separate property upon divorce. *Eggemeyer, 554 S.W.2d at 142*.

[**13] Such an analysis is also problematic because the fact that the district court erroneously [*449] applied the law when it entered the divorce decree does not alter the decree's plain language. In *Baxter*, which was decided after *Berry*, the divorce decree in question awarded the non-employee spouse "37 1/2% of [the employee spouse's] gross benefits, if, as and when he received them. The decree also provided that [the non-employee spouse] was to receive 37 1/2% of the total benefits that [the employee spouse] received each month." *794 S.W.2d at 763* (emphasis removed). We held that "this language unambiguously provided that [the non-employee spouse] was to receive 37 1/2% of the total retirement benefits received by [the employee spouse] each month, including any post- divorce increases." *Id.* [7] We therefore enforced the decree as written even though it conflicted with *Berry. Id.* Similarly, we must enforce the decree as written in this case even though it conflicts with *Taggart*.

> 7 We note, however, that we disagree with the

court of appeals' conclusion in this case that the phrase "if, as, and when received" is "a term of art evidencing an intent to value a pension plan at the time of receipt rather than at the time of divorce." *110 S.W.3d at 6, 2000 Tex. App. LEXIS 7945.* In *Cearley*, when we recognized contingent pension benefits as community property rights subject to division upon divorce, we acknowledged that "it may be necessary in many instances for the judgment to make the apportionment to the nonretiring spouse effective if, as, and when the benefits are received by the [employee] spouse." *544 S.W.2d at 666.* The term thus reflects the contingent nature of the community's interest in the retirement benefits and not necessarily the value of that interest.

[**14] Kenda argues that the district court cannot change the substantive division of property made in the original decree. We agree. While the court may enter a "clarifying order" to enforce compliance with an insufficiently specific decree, *TEX. FAM. CODE § 9.008(b)*, a court "may not amend, modify, alter, or change the division of property made or approved in the decree of divorce." *Id. § 9.007(a).* The original decree in this case is unambiguous, and the trial court had no authority to enter an order altering or modifying the original disposition of property. *Id.; Pierce v. Pierce, 850*

*S.W.2d 675, 679 (Tex. App.-El Paso 1993, writ denied); see also McGehee v. Epley, 661 S.W.2d 924, 925-26, 27 Tex. Sup. Ct. J. 45 (Tex. 1983)* (stating that clarification orders cannot be used to effect a substantive change in a divorce decree after the trial court's judgment becomes final). George's remedy for a substantive error of law by the trial court was by direct appeal, and he cannot now collaterally attack the judgment. *Mapco, Inc. v. Forrest, 795 S.W.2d 700, 703, 33 Tex. Sup. Ct. J. 303 (Tex. 1990); Baxter, 794 S.W.2d at 762; Stinson v. Stinson, 668 S.W.2d 840, 841 [**15] (Tex. App.-San Antonio 1984, writ ref'd n.r.e.).* The district court was therefore without authority to enter a QDRO altering the terms of the decree by limiting Kenda to a twenty-five percent interest in the benefits that had accrued under the plan at the time of the divorce.

## IV. Conclusion

The divorce decree is unambiguous and awarded Kenda Treadway twenty-five percent of George Shanks's total retirement benefits. The court of appeals was correct in reversing the district court's judgment, and we therefore affirm the judgment of the court of appeals.

Harriet O'Neill

Justice



KAREY B. STATIN, Plaintiff - Appellant v. DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee, formerly known as Bankers Trust Company, as Trustee for Certificate Holders of Saco I; JP MORGAN CHASE BANK, NATIONAL ASSOCIATION, as Mortgagee; EMC MORTGAGE CORPORATION, as Former Mortgagee, Defendants - Appellees

No. 14-20200 Summary Calendar

UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

*2014 U.S. App. LEXIS 24064*

December 19, 2014, Filed

NOTICE: PLEASE REFER TO *FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1* GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

PRIOR HISTORY: [*1] Appeal from the United States District Court for the Southern District of Texas. USDC No. 4:13-CV-3632.

COUNSEL: KAREY BERNARD STATIN, Plaintiff - Appellant, Pro se, Houston, TX.

For DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee, formerly known as Bankers Trust Company, as Trustee for Certificate Holders of Saco I, JP MORGAN CHASE BANK NATIONAL ASSOCIATION, as Mortgagee, EMC MORTGAGE CORPORATION, as Former Mortgagee, Defendants - Appellees: Marcie Lynn Schout, Esq., Kodie Preston Bennion, William Lance Lewis, Esq. Quilling, Selander, Lownds, Winslett & Moser, P.C., Dallas, TX.

JUDGES: Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

OPINION

PER CURIAM:*

* n* Pursuant to *5TH CIR. R. 47.5*, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in *5TH CIR. R. 47.5.4*.

In this appeal of a Rule 12(b)(6) dismissal of various claims challenging a foreclosure, the Plaintiff contends that the amount at stake in this lawsuit is insufficient to warrant removal to federal court on diversity grounds.

I.

In late November 2013, Karey Statin filed suit in Texas state court against Deutsche Bank, JP Morgan Chase, and EMC Mortgage Corporation. Statin, appearing *pro se*, alleged [*2] numerous violations of Texas law arising from the Defendants' treatment of his mortgage and attempt to foreclose on his home. Statin sought equitable relief voiding the foreclosure of his home and granting time to secure an additional loan to pay off $28,000 due on the mortgage, as well as a declaration that the mortgage would be satisfied by a $28,000 payment. Statin sought no monetary damages.

The Defendants filed a timely Notice of Removal on

the basis of diversity. The Notice of Removal contained a single sentence addressing the amount in controversy:

> The real property at issue has a current fair market value of $87,500.

The value of the property is the relevant consideration for determining amount in controversy for these common foreclosure cases seeking injunctive relief, *Farkas v. GMAC Mortg., L.L.C., 737 F.3d 338, 341 (5th Cir. 2013)*, but Defendants cited nothing to support their $87,500 valuation.[1]

> [1] The Supreme Court recently decided that defendants do not need to attach evidence supporting the alleged amount in controversy to the notice of removal. *See Dart Cherokee Basin Operating Co., LLC v. Owens, S. Ct. , 2014 U.S. LEXIS 8435, 2014 WL 7010692, at *6 (Dec. 15, 2014)*. That has long been our approach. *See Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 882-83 (5th Cir. 2000)*. *Dart Cherokee* also explained, however, that once the notice of removal's asserted amount is "challenged," the parties "must submit proof and the court [*3] decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *2014 U.S. LEXIS 8435, 2014 WL 7010692 at *5 (citing 28 U.S.C. § 1446(c)(2)(B))*. Although this discussion was likely not made with the procedural posture of this case in mind, it also does nothing to cast doubt on the prior case law cited below that provides a procedure for this situation when the amount is first challenged on appeal.

Statin then filed a Motion to Change Venue. Citing the Texas Civil Practice & Remedies Code, Statin argued that venue was proper in state court. The motion further argued that "Texas has a legal right to litigate issues arising out of its Courts, and its lands" and concluded that "defendant is improper, and premature in bringing his claim and his answer to this Honorable Court." Statin made no mention of diversity of citizenship, the amount in controversy requirement, or any other federal law.

Both the Defendants and the district court treated Statin's filing as a motion to remand the case to state court. The Defendants addressed the amount in controversy requirement by arguing that "Plaintiff does not contest that the amount in controversy exceeds the federal minimum jurisdictional limits." Again, the Defendants [*4] attached no proof of the house's fair market value or the value of the other equitable relief. They did not, for example, attach a county appraisal district's assessment of the property, which is a common way the amount-in-controversy requirement is proven in the numerous foreclosure cases that have been removed to federal court in recent years. *See, e.g., Valadez v. Bank of Am., 2013 U.S. Dist. LEXIS 97092, 2013 WL 3559145, *3-4 (W.D. Tex. July 11, 2013)* (noting that courts "rel[y] on county tax assessors' appraisals to determine the value of property in [amount in controversy] cases"); *Govea v. JPMorgan Chase Bank, N.A., 2010 U.S. Dist. LEXIS 130940, 2010 WL 5140064, *4 (S.D. Tex. Dec. 10, 2010)* (explaining why "the appraisal value from the Harris County Appraisal District" can "determin[e] the amount in controversy"). Instead, the Defendants pointed to their allegation in the Notice of Removal that the house had a value of $87,500. The district court denied the Motion to Remand, holding only that "[a]ccording to Defendants, the current fair market value of the Property is assessed at $87,500, which exceeds the federal jurisdictional amount of $75,000." The district court proceeded to the merits of Statin's claims, which it ultimately dismissed.

**II.**

Statin filed this appeal. In addition to contesting the district court's ruling on the merits, he also challenges for the first time on appeal the federal court's subject [*5] matter jurisdiction on the grounds that the amount-in-controversy requirement was not satisfied at the time of removal.

Defendants contend that they satisfied the amount-in-controversy requirement because, in their Notice of Removal, they asserted a fact supporting the amount in controversy and it went unchallenged by the Plaintiff in the district court.[2] Because subject matter jurisdiction can never be waived, however, a plaintiff may challenge the amount-in-controversy requirement for the first time on appeal. *See Larremore v. Lykes Bros. Inc., 454 F. App'x 305, 306-07 (5th Cir. 2011)* (citing *Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319-21 (11th Cir. 2001)* (citing *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 303-06 (2d Cir. 1994)* (explaining the concerns that underlie the rule and "declin[ing] to hold that the [plaintiff] has waived its

right to challenge for the first time [on appeal] the defendants' assertion of the amount in controversy set forth in the notice of removal"))). The problem when the issue is first raised on appeal with an insufficient evidentiary record is that the removing party never had notice of a need to produce evidence in the district court and cannot now provide such evidence to the appellate court. Courts, including ours, confronted with this situation have thus remanded the case to the district court so the defendant can submit evidence to support its claimed valuation [*6] of the case. *See Larremore, 454 F. App'x. at 307* ("[The plaintiffs] sought [only] declaratory and injunctive relief . . . Due to the incomplete nature of the factual record, we cannot determine if the amount in controversy exceeds the jurisdictional requirement. . . . [W]e think that a remand for development of the record and determination of jurisdiction is appropriate.").

> 2  Defendants further contend that the amount in controversy is satisfied because the amount due on the loan exceeds $75,000, but the amount due on the loan does not matter as Statin is not seeking to recover any of the loan. It would matter if Defendants had sued Statin for amounts due under the loan.

After it receives any relevant evidence from both sides, the district court can assess whether the Defendants have met their burden of demonstrating by a preponderance of the evidence that the amount in controversy was satisfied at the time of removal. *See 28 U.S.C. § 1446(c)(2)(B)*. Our determination that remand is warranted for development of a factual record on this issue is also supported by the fact, of which we can take judicial notice because it comes from a public record,[3] that the county appraisal for the property at the time of removal was only $62,392. *See* Real Property [*7] Account Information, Harris County Appraisal District, *available at* http://www.hcad.org/ (appraisal as of Jan. 1, 2014).

> 3  "An appellate court may take judicial notice of facts, even if such facts were not noticed by the trial court." *Harris v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll., 409 F. App'x 725, 727 n.2 (5th Cir. 2010)*.

The case therefore is REMANDED for the limited purpose of determining whether the amount in controversy exceeds $75,000.

# onecle

## Court Opinions

US Supreme Court
US Tax Court
Board of Patent Appeals

## State Laws

Alabama
Arizona
California
Florida
Georgia
Illinois
Indiana
Massachusetts
Michigan
Nevada
New Jersey
New York
North Carolina
Oregon
Pennsylvania
Texas
Virginia
Washington

## US Code

1 USC - General Provisions
2 USC - The Congress
3 USC - The President
4 USC - Flag and Seal
5 USC - Gov't Organization
6 USC - Domestic Security
7 USC - Agriculture
8 USC - Aliens and Nationality
9 USC - Arbitration
10 USC - Armed Forces
11 USC - Bankruptcy
12 USC - Banks and Banking
13 USC - Census
14 USC - Coast Guard
15 USC - Commerce and Trade
16 USC - Conservation
17 USC - Copyrights
18 USC - Crimes
19 USC - Customs Duties
20 USC - Education
21 USC - Food and Drugs
22 USC - Foreign Relations
23 USC - Highways
24 USC - Hospitals
25 USC - Indians
26 USC - Internal Revenue Code
27 USC - Intoxicating Liquors
28 USC - Judiciary
29 USC - Labor
30 USC - Mineral Lands
31 USC - Money and Finance
32 USC - National Guard
33 USC - Navigation
34 USC - Navy (repealed)
35 USC - Patents
36 USC - Patriotic Societies
37 USC - Uniformed Services
38 USC - Veterans' Benefits
39 USC - Postal Service
40 USC - Public Property
41 USC - Public Contracts
42 USC - Public Health

## Texas Family Code - Section 9.006. Enforcement Of Division Of Property

Legal Research Home > Texas Laws >Family Code > Texas Family Code - Section 9.006. Enforcement Of Division Of Property

§ 9.006. ENFORCEMENT OF DIVISION OF PROPERTY. (a) Except
as provided by this subchapter and by the Texas Rules of Civil
Procedure, the court may render further orders to enforce the
division of property made in the decree of divorce or annulment to
assist in the implementation of or to clarify the prior order.
        (b) The court may specify more precisely the manner of
effecting the property division previously made if the substantive
division of property is not altered or changed.
        (c) An order of enforcement does not alter or affect the
finality of the decree of divorce or annulment being enforced.

Added by Acts 1997, 75th Leg., ch. 7, § 1, eff. April 17, 1997.

Section: Previous 8.304 8.305 9.001 9.002 9.003 9.004 9.005 9.006 9.007 9.008 9.009 9.010 9.011 9.012 9.013 Next

*Last modified: August 11, 2007*

# Start 2015 by Saving Big

New Auto Insurance Rates from $15/Month - Get Free Quotes!

# onecle

Search

### Court Opinions

US Supreme Court
US Tax Court
Board of Patent Appeals

### State Laws

Alabama
Arizona
California
Florida
Georgia
Illinois
Indiana
Massachusetts
Michigan
Nevada
New Jersey
New York
North Carolina
Oregon
Pennsylvania
Texas
Virginia
Washington

### US Code

1 USC - General Provisions
2 USC - The Congress
3 USC - The President
4 USC - Flag and Seal
5 USC - Gov't Organization
6 USC - Domestic Security
7 USC - Agriculture
8 USC - Aliens and Nationality
9 USC - Arbitration
10 USC - Armed Forces
11 USC - Bankruptcy
12 USC - Banks and Banking
13 USC - Census
14 USC - Coast Guard
15 USC - Commerce and Trade
16 USC - Conservation
17 USC - Copyrights
18 USC - Crimes
19 USC - Customs Duties
20 USC - Education
21 USC - Food and Drugs
22 USC - Foreign Relations
23 USC - Highways
24 USC - Hospitals
25 USC - Indians
26 USC - Internal Revenue Code
27 USC - Intoxicating Liquors
28 USC - Judiciary
29 USC - Labor
30 USC - Mineral Lands
31 USC - Money and Finance
32 USC - National Guard
33 USC - Navigation
34 USC - Navy (repealed)
35 USC - Patents
36 USC - Patriotic Societies
37 USC - Uniformed Services
38 USC - Veterans' Benefits
39 USC - Postal Service
40 USC - Public Property
41 USC - Public Contracts
42 USC - Public Health

## Texas Family Code - Section 9.007. Limitation On Power Of Court To Enforce

Legal Research Home > Texas Laws > Family Code > Texas Family Code - Section 9.007. Limitation On Power Of Court To Enforce



§ 9.007. LIMITATION ON POWER OF COURT TO ENFORCE.  (a) A
court may not amend, modify, alter, or change the division of
property made or approved in the decree of divorce or annulment.  An
order to enforce the division is limited to an order to assist in
the implementation of or to clarify the prior order and may not
alter or change the substantive division of property.
        (b)  An order under this section that amends, modifies,
alters, or changes the actual, substantive division of property
made or approved in a final decree of divorce or annulment is beyond
the power of the divorce court and is unenforceable.
        (c)  The power of the court to render further orders to
assist in the implementation of or to clarify the property division
is abated while an appellate proceeding is pending.

Added by Acts 1997, 75th Leg., ch. 7, § 1, eff. April 17, 1997.

Section: Previous 8.305 9.001 9.002 9.003 9.004 9.005 9.006 9.007 9.008 9.009 9.010 9.011 9.012 9.013 9.014 Next

*Last modified: August 11, 2007*

## Start 2015 by Saving Big

New Auto Insurance Rates from $15/Month - Get Free Quotes!



TRIDEN
UNIVEI
ONLINE UNIVERSI
Learn Mo

Bachelor's Deg
6 Degrees
29 Concentrations
Business Admin
Health Sciences
Information Syst

Master's Degre
8 Degrees
42 Concentrations
Business Admin
Information Syst
Health Sciences
Education

PhD Degrees
4 Degrees
12 Concentrations
Business Admin
Health Sciences
Education

Learn Mo

TRIDEN
UNIVEI

# onecle

Search

**Court Opinions**

US Supreme Court
US Tax Court
Board of Patent Appeals

**State Laws**

Alabama
Arizona
California
Florida
Georgia
Illinois
Indiana
Massachusetts
Michigan
Nevada
New Jersey
New York
North Carolina
Oregon
Pennsylvania
Texas
Virginia
Washington

**US Code**

1 USC - General Provisions
2 USC - The Congress
3 USC - The President
4 USC - Flag and Seal
5 USC - Gov't Organization
6 USC - Domestic Security
7 USC - Agriculture
8 USC - Aliens and Nationality
9 USC - Arbitration
10 USC - Armed Forces
11 USC - Bankruptcy
12 USC - Banks and Banking
13 USC - Census
14 USC - Coast Guard
15 USC - Commerce and Trade
16 USC - Conservation
17 USC - Copyrights
18 USC - Crimes
19 USC - Customs Duties
20 USC - Education
21 USC - Food and Drugs
22 USC - Foreign Relations
23 USC - Highways
24 USC - Hospitals
25 USC - Indians
26 USC - Internal Revenue Code
27 USC - Intoxicating Liquors
28 USC - Judiciary
29 USC - Labor
30 USC - Mineral Lands
31 USC - Money and Finance
32 USC - National Guard
33 USC - Navigation
34 USC - Navy (repealed)
35 USC - Patents
36 USC - Patriotic Societies
37 USC - Uniformed Services
38 USC - Veterans' Benefits
39 USC - Postal Service
40 USC - Public Property
41 USC - Public Contracts
42 USC - Public Health

# Texas Family Code - Section 9.008. Clarification Order

Legal Research Home > Texas Laws > Family Code > Texas Family Code - Section 9.008. Clarification Order

## New 2015 Deals Available

Auto Insurance Rates from $15/Month Offer ends in 15 days! Save Now

§ 9.008. CLARIFICATION ORDER.  (a) On the request of a
party or on the court's own motion, the court may render a
clarifying order before a motion for contempt is made or heard, in
conjunction with a motion for contempt or on denial of a motion for
contempt.
　　　　(b)  On a finding by the court that the original form of the
division of property is not specific enough to be enforceable by
contempt, the court may render a clarifying order setting forth
specific terms to enforce compliance with the original division of
property.
　　　　(c)  The court may not give retroactive effect to a
clarifying order.
　　　　(d)  The court shall provide a reasonable time for compliance
before enforcing a clarifying order by contempt or in another
manner.

Added by Acts 1997, 75th Leg., ch. 7, § 1, eff. April 17, 1997.

Section: Previous 9.001 9.002 9.003 9.004 9.005 9.006 9.007 9.008 9.009 9.010 9.011 9.012 9.013 9.014 9.101 Next

*Last modified: August 11, 2007*

COPY

NO. 226,429-B

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| TIMOTHY PARRISH | § | |
| AND | § | 146TH JUDICIAL DISTRICT |
| TRISHA ANN PARRISH | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| JOSHUA ROBERT PARRISH AND | § | |
| ZACHARY ALLEN PARRISH, | § | BELL COUNTY, TEXAS |
| CHILDREN | | |

2008 APR 30 AM 9: 09
STEFFA DEPUTY
DIST CT COURT
BELL COUNTY, TX
BY _____

## FINAL DECREE OF DIVORCE

On _____ APR 3 0 2008 _____ the Court heard this case.

*Appearances*

Petitioner, TIMOTHY PARRISH, appeared in person and through attorney of record, DANIEL A. CORBIN, and announced ready for trial.

Respondent, TRISHA ANN PARRISH, waived issuance and service of citation by waiver duly filed and did not otherwise appear.

*Record*

The making of a record of testimony was waived by the parties with the consent of the Court.

*Jurisdiction and Domicile*

The Court finds that the pleadings of Petitioner are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction of this case and of all the parties and that at least sixty days have elapsed since the date the suit was filed. The Court finds that, at the time this suit was filed, Petitioner had been a domiciliary of Texas for the preceding six-month period and a resident of the county in which this suit was filed for the preceding ninety-day period. All persons entitled to citation were properly cited.

*Jury*

A jury was waived, and questions of fact and of law were submitted to the Court.

*Agreement of Parties*

The Court finds that the parties have entered into a written agreement as contained in this decree by virtue of having approved this decree as to both form and substance. To the extent permitted by law, the parties stipulate the agreement is enforceable as a contract. The Court approves the agreement of the parties as contained in this Final Decree of Divorce.

Final Decree of Divorce
TIMOTHY PARRISH v. TRISHA ANN PARRISH

Page 1


EXHIBIT
A

*Divorce*

IT IS ORDERED AND DECREED that TIMOTHY PARRISH, Petitioner, and TRISHA ANN PARRISH, Respondent, are divorced and that the marriage between them is dissolved on the ground of insupportability.

*Children of the Marriage*

The Court finds that Petitioner and Respondent are the parents of the following children:

Name: JOSHUA ROBERT PARRISH
Sex:    Male
Birth date:      March 26, 1996
Home state:    Texas
Social Security number:          _____

Name: ZACHARY ALLEN PARRISH
Sex:    Male
Birth date:     September 4, 2000
Home state:     Texas
Social Security number:          _____

The Court finds no other children of the marriage are expected.

*Conservatorship*

The Court, having considered the circumstances of the parents and of the children, finds that the following orders are in the best interest of the children.

IT IS ORDERED that TIMOTHY PARRISH and TRISHA ANN PARRISH are appointed Joint Managing Conservators of the following children:  JOSHUA ROBERT PARRISH and ZACHARY ALLEN PARRISH.

IT IS ORDERED that, at all times, TIMOTHY PARRISH, as a parent joint managing conservator, shall have the following rights:

1.      the right to receive information from any other conservator of the children concerning the health, education, and welfare of the children;

2.      the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children;

3.      the right of access to medical, dental, psychological, and educational records of the children;

4.      the right to consult with a physician, dentist, or psychologist of the children;

5.      the right to consult with school officials concerning the children's welfare and educational status, including school activities;

6.      the right to attend school activities;

7.      the right to be designated on the children's records as a person to be notified in case of an emergency;

8.      the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the children; and

9.      the right to manage the estates of the children to the extent the estates have been created by the parent or the parent's family.

IT IS ORDERED that, at all times, TRISHA ANN PARRISH, as a parent joint managing conservator, shall have the following rights:

1.      the right to receive information from any other conservator of the children concerning the health, education, and welfare of the children;

2.      the right to confer with the other parent to the extent possible before making a decision concerning the health, education, and welfare of the children;

3.      the right of access to medical, dental, psychological, and educational records of the children;

4.      the right to consult with a physician, dentist, or psychologist of the children;

5.      the right to consult with school officials concerning the children's welfare and educational status, including school activities;

6.      the right to attend school activities;

7.      the right to be designated on the children's records as a person to be notified in case of an emergency;

8.      the right to consent to medical, dental, and surgical treatment during an emergency involving an immediate danger to the health and safety of the children; and

9.      the right to manage the estates of the children to the extent the estates have been created by the parent or the parent's family.

IT IS ORDERED that, at all times, TIMOTHY PARRISH and TRISHA ANN PARRISH, as parent joint managing conservators, shall each have the following duties:

1.      the duty to inform the other conservator of the children in a timely manner of significant information concerning the health, education, and welfare of the children; and

2.      the duty to inform the other conservator of the children if the conservator resides with for at least thirty days, marries, or intends to marry a person who the conservator knows is registered as a sex offender under chapter 62 of the Code of Criminal Procedure or is currently charged with an offense for which on conviction the person would be required to register under that chapter. IT IS ORDERED that this information shall be tendered in the form of a notice made as soon as practicable, but not later than the fortieth day after the date the conservator of the children begins to reside with the person or on the tenth day after the date the marriage occurs, as appropriate. IT IS ORDERED that the notice must include a description of the offense that is the basis of the person's

requirement to register as a sex offender or of the offense with which the person is charged. WARNING: A CONSERVATOR COMMITS AN OFFENSE PUNISHABLE AS A CLASS C MISDEMEANOR IF THE CONSERVATOR FAILS TO PROVIDE THIS NOTICE.

IT IS ORDERED that, during his respective periods of possession, TIMOTHY PARRISH, as parent joint managing conservator, shall have the following rights and duties:

1. the duty of care, control, protection, and reasonable discipline of the children;

2. the duty to support the children, including providing the children with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3. the right to consent for the children to medical and dental care not involving an invasive procedure;

4. the right to consent for the child to medical, dental, and surgical treatment during an emergency involving immediate danger to the health and safety of the child; and

5. the right to direct the moral and religious training of the children.

IT IS ORDERED that, during her respective periods of possession, TRISHA ANN PARRISH, as parent joint managing conservator, shall have the following rights and duties:

1. the duty of care, control, protection, and reasonable discipline of the children;

2. the duty to support the children, including providing the children with clothing, food, shelter, and medical and dental care not involving an invasive procedure;

3. the right to consent for the children to medical and dental care not involving an invasive procedure; and

4. the right to consent for the child to medical, dental, and surgical treatment during an emergency involving immediate danger to the health and safety of the child; and

5. the right to direct the moral and religious training of the children.

IT IS ORDERED that TIMOTHY PARRISH, as a parent joint managing conservator, shall have the following rights and duty:

1. the independent right to consent to medical, dental, and surgical treatment involving invasive procedures;

3. the independent right to consent to psychiatric and psychological treatment of the children;

4. the independent right to represent the children in legal action and to make other decisions of substantial legal significance concerning the children;

5. the independent right to consent to marriage and to enlistment in the armed forces of the United States;

6. the independent right to make decisions concerning the children's education;

7. except as provided by section 264.0111 of the Texas Family Code, the independent right to the services and earnings of the children;

8. except when a guardian of the children's estates or a guardian or attorney ad litem has been appointed for the children, the independent right to act as an agent of the children in relation to the children's estates if the children's action is required by a state, the United States, or a foreign government; and

9. the independent duty to manage the estates of the children to the extent the estates have been created by community property or the joint property of the parents.

IT IS ORDERED that TRISHA ANN PARRISH, as a parent joint managing conservator, shall have the following rights and duty:

1. the independent right to consent to medical, dental, and surgical treatment involving invasive procedures;

2. the independent right to consent to psychiatric and psychological treatment of the children;

3. the exclusive right to receive and give receipt for periodic payments for the support of the children and to hold or disburse these funds for the benefit of the children;

4. the independent right to represent the children in legal action and to make other decisions of substantial legal significance concerning the children;

5. the independent right to consent to marriage and to enlistment in the armed forces of the United States;

6. the independent right to make decisions concerning the children's education;

7. except as provided by section 264.0111 of the Texas Family Code, the independent right to the services and earnings of the children;

8. except when a guardian of the children's estates or a guardian or attorney ad litem has been appointed for the children, the independent right to act as an agent of the children in relation to the children's estates if the children's action is required by a state, the United States, or a foreign government; and

9. the independent duty to manage the estates of the children to the extent the estates have been created by community property or the joint property of the parents.

Geographical Restriction

IT IS ORDERED and THE PARTIES AGREE that a geographical restriction is in effect limiting the residence of the parties to a 100 mile radius of Bell County, Texas for five years from the entry of this order.

*Possession and Access*

IT IS ORDERED AND THE PARTIES AGREED that the joint managing conservators shall have possession of the children at times mutually agreed to in advance by the parties, and in the absence of mutual agreement, as follows:

1.      TIMOTHY PARRISH and TRISHA ANN PARISH will alternate weekly possession of the children beginning Sunday at 4:00 p.m. and ending the following Sunday at 4:00 p.m.

2.      *Other Provisions*

In addition to all other provisions for possession provided in this decree, the following periods of possession are ORDERED:

1.      Right of First Refusal - If a parent will be absent for more than one hour while the children are in that parent's care, then that parent shall notify the other parent, and the other parent shall have the right to care for the children during that absence.

2.      Extracurricular Activities - Extracurricular expenses shall be split as follows: 50% by TIMOTHY PARRISH and 50% by TRISHA ANN PARRISH.

3.      *Duration*

The periods of possession ordered above apply to each child the subject of this suit while that child is under the age of eighteen years and not otherwise emancipated.

4.      *Termination of Orders*

The provisions of this decree relating to conservatorship, possession, or access terminate on the remarriage of TIMOTHY PARRISH to TRISHA ANN PARRISH unless a nonparent or agency has been appointed conservator of the children under chapter 153 of the Texas Family Code.

*Child Support*

IT IS ORDERED that TIMOTHY PARRISH is obligated to pay and shall pay to TRISHA ANN PARRISH child support of $1359.38 per month, with the first payment being due and payable on April 1, 2008 and a like payment being due and payable on the first day of each month thereafter until the first month following the date of the earliest occurrence of one of the events specified below:

1.      any child reaches the age of eighteen years or graduates from high school, whichever occurs later, subject to the provisions for support beyond the age of eighteen years set out below;
2.      any child marries;
3.      any child dies;
4.      any child's disabilities are otherwise removed for general purposes; or
5.      the date on which any child begins active service as defined by 10 U.S.C. Section 101 after enlisting in the armed forces of the United States.

Thereafter, TIMOTHY PARRISH is ORDERED to pay to TRISHA ANN PARRISH child support of $1087.51 per month, due and payable on the first day of the first month immediately following the date of the earliest occurrence of one of the events specified above for the other child and a like sum of $1087.51 due and payable on the first day of each month thereafter until the next occurrence of one of the events specified above for the other child.

If the child is eighteen years of age and has not graduated from high school, IT IS ORDERED that TIMOTHY PARRISH's obligation to pay child support to TRISHA ANN PARRISH shall not terminate but shall continue for as long as the child is enrolled-

1.     under chapter 25 of the Texas Education Code in a secondary school in a program leading toward a high school diploma or under section 130.008 of the Education Code in courses for joint high school and junior college credit and is complying with the minimum attendance requirements of subchapter C of chapter 25 of the Education Code or

2.     on a full-time basis in a private secondary school in a program leading toward a high school diploma and is complying with the minimum attendance requirements imposed by that school.

## Withholding from Earnings

IT IS ORDERED that any employer of TIMOTHY PARRISH shall be ordered to withhold from earnings for child support from the disposable earnings of TIMOTHY PARRISH for the support of JOSHUA ROBERT PARRISH and ZACHARY ALLEN PARRISH.

IT IS FURTHER ORDERED that all amounts withheld from the disposable earnings of TIMOTHY PARRISH by the employer and paid in accordance with the order to that employer shall constitute a credit against the child support obligation. Payment of the full amount of child support ordered paid by this decree through the means of withholding from earnings shall discharge the child support obligation. If the amount withheld from earnings and credited against the child support obligation is less than 100 percent of the amount ordered to be paid by this decree, the balance due remains an obligation of TIMOTHY PARRISH, and it is hereby ORDERED that TIMOTHY PARRISH pay the balance due directly to the state disbursement unit specified below.

On this date the Court signed an Order/Notice to Withhold Income for Child Support.

## Payment

IT IS ORDERED that all payments shall be made through the state disbursement unit at Texas Child Support Disbursement Unit, P.O. Box 659791, San Antonio, Texas 78265-9791, and thereafter promptly remitted to TRISHA ANN PARRISH for the support of the children. IT IS ORDERED that each party shall pay, when due, all fees charged to that party by the state disbursement unit and any other agency statutorily authorized to charge a fee.

## Change of Employment

IT IS FURTHER ORDERED that TIMOTHY PARRISH shall notify this Court and TRISHA ANN PARRISH by U.S. certified mail, return receipt requested, of any change of address and of any termination of employment. This notice shall be given no later than seven days after the change of address or the termination of employment. This notice or a subsequent notice shall also provide the current address of TIMOTHY PARRISH and the name and address of his current employer, whenever that information becomes available.

## Clerk's Duties

IT IS ORDERED that, on the request of a prosecuting attorney, the title IV-D agency, the friend of the Court, a domestic relations office, TRISHA ANN PARRISH, TIMOTHY PARRISH, or an attorney representing TRISHA ANN PARRISH or TIMOTHY PARRISH, the clerk of this Court shall cause a certified copy of the Order/Notice to Withhold Income for Child Support to be delivered to any employer.

*Health Care*

1.      The Court finds that the following provisions of this medical support order are intended to and do comply with the priority requirements of Texas Family Code section 154.182 as follows:   The Court finds that health insurance is available through TIMOTHY PARRISH's employment at a reasonable cost and therefore ORDERS TIMOTHY PARRISH to provide health insurance as specified below."

2.      IT IS ORDERED that TIMOTHY PARRISH and TRISHA ANN PARRISH shall each provide medical support and health care coverage for each child as set out in this order as additional child support for as long as the Court may order TIMOTHY PARRISH and TRISHA ANN PARRISH to provide support for the child under sections 154.001 and 154.002 of the Texas Family Code.  Beginning on the day TIMOTHY PARRISH and TRISHA ANN PARRISH's actual or potential obligation to support a child under sections 154.001 and 154.002 of the Family Code terminates, IT IS ORDERED that TIMOTHY PARRISH and TRISHA ANN PARRISH are discharged from the obligations set forth in this medical support order with respect to that child, except for any failure by a parent to fully comply with those obligations before that date.

3.      Definitions -

"Health Insurance" means insurance coverage that provides basic health-care services, including usual physician services, office visits, hospitalization, and laboratory, X-ray, and emergency services, that may be provided through a health maintenance organization or other private or public organization, other than medical assistance under chapter 32 of the Texas Human Resources Code.

"Reasonable cost" means the cost of health insurance coverage for a child that does not exceed nine percent of the responsible parent's annual resources as described by the Texas Family Code section 154.062(b).

"Reasonable and necessary health-care expenses not paid by insurance and incurred by or on behalf of a child" include, without limitation, any copayments for office visits or prescription drugs, the yearly deductible, if any, and medical, surgical, prescription drug, mental health-care services, dental, eye care, ophthalmological, and orthodontic charges. These reasonable and necessary health-care expenses do not include expenses for travel to and from the health-care provider or for nonprescription medication.

"Furnish" means:

a.      to hand deliver the document by a person eighteen years or older either to the recipient or to a person who is eighteen years or older and permanently resides with the recipient;

b.      to deliver the document to the recipient by certified mail, return receipt requested, to the recipient's last known mailing or residence address; or

c.      to deliver the document to the recipient at the recipient's last known mailing or residence address using any person or entity whose principal business is that of a courier or deliverer of papers or documents either within or outside the United States.

4.      Obligations of TIMOTHY PARRISH - TIMOTHY PARRISH is ORDERED to include and maintain each child in TIMOTHY PARRISH's health insurance available through his employment no later than the date the Court signs this order.

5.      Obligations of TIMOTHY PARRISH - TIMOTHY PARRISH is ORDERED -

a.      to furnish to each conservator of the children and the child support registry the following information no later than the thirtieth day after the date the notice of the rendition of this order is received:

i.      the Social Security number of the parent providing insurance;

ii.      the name and address of the employer of the parent providing insurance;

iii.      whether the employer is self-insured or has health insurance available;

iv.      proof that health insurance has been provided for each child; and

v.      the name of the health insurance carrier, the number of the policy, a copy of the policy and schedule of benefits, a health insurance membership card, claim forms, and any other information necessary to submit a claim or, if the employer is self-insured, a copy of the schedule of benefits, a membership card, claim forms, and any other information necessary to submit a claim;

b. to furnish to each conservator of the children a copy of any renewals or changes to the health insurance policy covering a child, or any additional information regarding health insurance coverage of the child, including any change in the actual cost of the health insurance for the child, no later than the fifteenth day after the party providing the health insurance receives or is provided with the renewal, change, or additional information;

c. to furnish each conservator of the children and the child support registry with all documentation accessible to TIMOTHY PARRISH of any termination or lapse of the health insurance coverage of a child no later than the fifteenth day after the date of the termination or lapse;

d. after termination or lapse of health insurance coverage, to furnish each conservator of the children and the child support registry with all documentation accessible to TIMOTHY PARRISH of the availability of additional health insurance for the children no later than the fifteenth day after the date the insurance becomes available;

e. after a termination or lapse of health insurance coverage, to furnish each conservator of the children and the child support registry with all documentation accessible to TIMOTHY PARRISH of the availability of enrollment of the children in a government medical assistance program, government health plan, medical assistance program under chapter 32 of the Texas Human Resources Code or a state child health plan under chapter 62 of the Texas Health and Safety Code, no later than the fifteenth day after the date the enrollment in the program becomes available;

f. to enroll the children at the next available enrollment period in a health insurance plan that is available at reasonable cost after the previous health insurance has been terminated or has lapsed; and

g. to enroll the children in a government medical assistance program, government health plan, medical assistance program under chapter 32 of the Texas Human Resources Code or a state child health plan under chapter 62 of the Texas Health and Safety Code if the children are eligible for enrollment in the program and no health insurance plan is available at reasonable cost.

6. Secondary Coverage - IT IS ORDERED that nothing in this order shall prevent either party from providing secondary health insurance coverage for the children at that party's sole cost and expense. IT IS FURTHER ORDERED that if a party provides secondary health insurance coverage for the children, both parties shall cooperate fully with regard to the handling and filing of claims with the insurance carrier providing the coverage in order to maximize the benefits available to the children and to ensure that the party who pays for health-care expenses for the children is reimbursed for the payment from both carriers to the fullest extent possible.

7. Compliance with Insurance Company Requirements - Each party is ORDERED to conform to all requirements imposed by the terms and conditions of the policy of health insurance covering the children in order to assure maximum reimbursement or direct payment by the insurance company of the incurred health-care expense, including but not limited to requirements for advance notice to carrier, second opinions, and the like. Each party is ORDERED to attempt to use "preferred providers," or services within the health maintenance organization, if applicable; however, this provision shall not apply if emergency care is required. Disallowance of the bill by a health insurer shall not excuse the obligation of either party to make payment; however, if a bill is disallowed or the benefit reduced because of the failure of a party to follow procedures or requirements of the carrier, IT IS ORDERED that the party failing to follow the carrier's procedures or requirements shall be wholly responsible for the increased portion of that bill.

IT IS FURTHER ORDERED that no surgical procedure, other than in an emergency or one covered by insurance, shall be performed on the child unless the parent consenting to surgery has first consulted with at least two medical doctors, both of whom state an opinion that the surgery is medically necessary. IT IS FURTHER ORDERED that a parent who fails to obtain the required medical opinions before consent to surgery on the child shall be wholly responsible for all medical and hospital expenses incurred in connection therewith.

8. Claims - Except as provided in this paragraph, the party who is not carrying the health insurance policy covering the children is ORDERED to furnish to the party carrying the policy, within fifteen days of receiving them, any and all forms, receipts, bills, and statements reflecting the health-care expenses the party not carrying the policy incurs on behalf of the children. In accordance with section 1204.251 of the Texas Insurance Code, IT IS ORDERED that the party who is not carrying the health insurance policy covering the children may, at that party's option, file directly with the insurance carrier with whom coverage is provided for the benefit of the children any claims for health-care expenses, including but not limited to medical, hospitalization, and dental costs, and receive payments directly from the insurance company.

The party who is carrying the health insurance policy covering the children is ORDERED to submit all forms required by the insurance company for payment or reimbursement of health-care expenses incurred by either party on behalf of a child to the insurance carrier within fifteen days of that party's receiving any form, receipt, bill, or statement reflecting the expenses.

9. Constructive Trust for Payments Received - IT IS ORDERED that any insurance payments received by a party from the health insurance carrier as reimbursement for health-care expenses incurred by or on behalf of a child shall belong to the party who incurred and paid those expenses. IT IS FURTHER ORDERED that the party receiving the insurance payments is designated a constructive trustee to receive any insurance checks or payments for health-care expenses incurred and paid by the other party, and the party carrying the policy shall endorse and forward the checks or payments, along with any explanation of benefits received, to the other party within three days of receiving them.

10. Health-Care Expenses Not Paid by Insurance or Cash Medical Support- Subject to the provisions in paragraph 7. immediately above, IT IS ORDERED that, if health-care expenses are incurred for a child, TIMOTHY PARRISH and TRISHA ANN PARRISH shall pay all reasonable and necessary health-care expenses not paid by insurance or covered by the amount of cash medical support ordered and incurred by or on behalf of the child in the following portions:

      a.      If the health-care expenses are incurred by using a HMO or PPO plan, in an emergency, or with the written agreement of the other party, TIMOTHY PARRISH is ORDERED to pay 50 percent and TRISHA ANN PARRISH is ORDERED to pay 50 percent.

      b.      Except in an emergency or if the other parent agreed in writing, if a party incurs health-care expenses for the child by using the services of health-care providers not employed by the HMO or approved by the PPO, the party incurring the services is ORDERED to pay 100 percent and the other party is ORDERED to pay 0 percent.

      c.      If TIMOTHY PARRISH provides health insurance for the child through an HMO or a PPO that does not provide coverage for the child where the child resides or have network providers in the area where the child resides, TIMOTHY PARRISH is ORDERED to pay 50 percent and TRISHA ANN PARRISH is ORDERED to pay 50 percent.

      d.      If the child is enrolled in a health-care plan that is not an HMO or a PPO, TIMOTHY PARRISH is ORDERED to pay 50 percent and TRISHA ANN PARRISH is ORDERED to pay 50 percent.

      e.      If the child was enrolled in a government medical assistance program, government health plan, medical assistance program under chapter 32 of the Texas Human Resources Code or a state child health plan under chapter 62 of the Texas Health and Safety Code and is no longer eligible for coverage in that plan or program, TIMOTHY PARRISH is ORDERED to pay 50 percent and TRISHA ANN PARRISH is ORDERED to pay 50 percent until health insurance is provided for the child or the child is again eligible for enrollment in a government medical assistance program, government health plan, medical assistance program under chapter 32 of the Texas Human Resources Code or a state child health plan under chapter 62 of the Texas Health and Safety Code.

      f.      If health care coverage is provided for the child in the form of cash medical support, TIMOTHY PARRISH is ORDERED to pay 50 percent and TRISHA ANN PARRISH is ORDERED to pay 50 percent.

IT IS ORDERED that the party who pays for a health-care expense on behalf of a child shall furnish to the other party, within thirty days of receiving them, all forms, receipts, bills, and explanations of benefits paid reflecting the uninsured portion of the health-care expenses the paying party incurs on behalf of the child. IT IS FURTHER ORDERED that if the paying party furnishes all of these forms, receipts, bills, and explanations of benefits to the nonpaying party within thirty days of receiving them, the nonpaying party shall pay his or her share of the uninsured portion of the health-care expenses either by paying the health-care provider directly or by reimbursing the paying party at the paying party's last known mailing or residence address for any advance payment exceeding the paying party's share of the expenses no later than thirty days after the nonpaying party receives the following documentation relating to the health-care expense:

      a.      a receipt for a prescription,
      b.      a receipt for a copayment for health-care services,
      c.      a receipt for health-care expenses of a type not covered by the health insurance plan, or
      d.      an explanation of benefits stating the benefits paid for all other health-care expenses.

If the paying party does not furnish to the nonpaying party all of the forms, receipts, bills, and explanations of benefits paid reflecting the uninsured portion of a health-care expense the paying party incurred on behalf of the child within thirty days of receiving these documents, IT IS ORDERED that the nonpaying party shall pay his or her share of the uninsured portion of the health-care expense either by paying the health-care provider directly or by reimbursing the paying party at the paying party's last known mailing or residence address for any advance payment exceeding the paying party's share of the expense no later than 120 days after the nonpaying party receives the documentation listed above in this section relating to the health-care expense.

IT IS ORDERED that reasonableness of the charges for health-care expenses shall be presumed when a party is furnished with the applicable documents for the charges and that disallowance of the bill by a health insurer shall not excuse that party's obligation to make payment or reimbursement as otherwise provided herein.

11.     Miscellaneous Health Care Provisions -

Each parent will deliver the medications of the children to the other parent at the beginning of the other parent's parenting time, unless the medications have been divided by the pharmacist into two containers that provide appropriate dosages and administrations to cover the time with each parent or unless two prescriptions can be obtained.

12.     WARNING - A PARENT ORDERED TO PROVIDE HEALTH INSURANCE OR TO PAY THE OTHER PARENT ADDITIONAL CHILD SUPPORT FOR THE COST OF HEALTH INSURANCE WHO FAILS TO DO SO IS LIABLE FOR NECESSARY MEDICAL EXPENSES OF THE CHILDREN, WITHOUT REGARD TO WHETHER THE EXPENSES WOULD HAVE BEEN PAID IF HEALTH INSURANCE HAD BEEN PROVIDED, AND FOR THE COST OF HEALTH INSURANCE PREMIUMS OR CONTRIBUTIONS, IF ANY, PAID ON BEHALF OF THE CHILDREN.

*Miscellaneous Child Support Provisions*

### Military Health Care and Commissary Privileges

The Court finds that TIMOTHY PARRISH is a member of the United States Armed Forces and that the children of this marriage are eligible to receive health care and other benefits as dependents of a United States Armed Forces member. Therefore, TIMOTHY PARRISH is ORDERED to keep and maintain in current status and deliver to TRISHA ANN PARRISH the identification cards and any other forms necessary for the children of this marriage to be provided health care through all facilities available to the children as dependents of a United States Armed Forces member. TIMOTHY PARRISH is FURTHER ORDERED to provide to TRISHA ANN PARRISH all additional verified applications for renewal of dependent identification cards at least thirty days before the expiration date of the identification cards, until the children are no longer eligible for these benefits.

### No Credit for Informal Payments

IT IS ORDERED that the child support as prescribed in this decree shall be exclusively discharged in the manner ordered and that any direct payments made by TIMOTHY PARRISH to TRISHA ANN PARRISH or any expenditures incurred by TIMOTHY PARRISH during TIMOTHY PARRISH's periods of possession of or access to the children, as prescribed in this decree, for food, clothing, gifts, travel, shelter, or entertainment are deemed in addition to and not in lieu of the support ordered in this decree.

### Support as Obligation of Estate

IT IS ORDERED that the provisions for child support in this decree shall be an obligation of the estate of TIMOTHY PARRISH, shall not terminate on the death of TIMOTHY PARRISH, and the remaining unpaid balance of the child support obligation becomes payable on the date TIMOTHY PARRISH dies.

### Termination of Orders on Remarriage of Parties

The provisions of this decree relating to current child support terminate on the remarriage of TIMOTHY PARRISH to TRISHA ANN PARRISH unless a nonparent or agency has been appointed conservator of the children under chapter 153 of the Texas Family Code. An obligation to pay child support under this decree does not terminate on the death of TRISHA ANN PARRISH but continues as an obligation to JOSHUA ROBERT PARRISH and ZACHARY ALLEN PARRISH.

*Medical Notification*

Each party is ORDERED to inform the other party within one (1) hours of any medical condition of the children requiring surgical intervention, hospitalization, or both.

Within thirty (30) days after the Court signs this decree, each party is ORDERED to execute -

1. all necessary releases pursuant to the Health Insurance Portability and Accountability Act (HIPAA) and 45 C.F.R. section 164.508 to permit the other conservator to obtain health-care information regarding the children; and

2. for all health-care providers of the children, an authorization for disclosure of protected health information to the other conservator pursuant to the HIPAA and 45 C.F.R. section 164.508.

Each party is further ORDERED to designate the other conservator as a person to whom protected health information regarding the children may be disclosed whenever the party executes an authorization for disclosure of protected health information pursuant to the HIPAA and 45 C.F.R. section 164.508.

*Information Regarding Parties*

The information required for each party by section 105.006(a) of the Texas Family Code is as follows:

Name: TIMOTHY PARRISH
Social Security number: 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
Driver's license number: 01252634   Issuing state:  Texas
Current residence address: 472 Cactus Cr., Killeen, Texas  76542
Mailing address: 472 Cactus Cr., Killeen, Texas  76542
Home telephone number: 254-526-9963
Name of employer: United States Army
Address of employment: Fort Hood, Texas
Work telephone number: 254-238-0592

Name: TRISHA ANN PARRISH
Social Security number: 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
Driver's license number 21845377   Issuing state:  Texas
Current residence address: 472 Cactus Circle, Killeen, Texas  76542
Mailing address: 472 Cactus Circle, Killeen, Texas  76542
Home telephone number: 254-526-9963
Name of employer: Florence School District
Address of employment: Florence, Texas
Work telephone number: 254-258-1762

EACH PERSON WHO IS A PARTY TO THIS ORDER IS ORDERED TO NOTIFY EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY OF ANY CHANGE IN THE PARTY'S CURRENT RESIDENCE ADDRESS, MAILING ADDRESS, HOME TELEPHONE NUMBER, NAME OF EMPLOYER, ADDRESS OF EMPLOYMENT, DRIVER'S LICENSE NUMBER, AND WORK TELEPHONE NUMBER. THE PARTY IS ORDERED TO GIVE NOTICE OF AN INTENDED CHANGE IN ANY OF THE REQUIRED INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY ON OR

BEFORE THE 60TH DAY BEFORE THE INTENDED CHANGE. IF THE PARTY DOES NOT KNOW OR COULD NOT HAVE KNOWN OF THE CHANGE IN SUFFICIENT TIME TO PROVIDE 60-DAY NOTICE, THE PARTY IS ORDERED TO GIVE NOTICE OF THE CHANGE ON OR BEFORE THE FIFTH DAY AFTER THE DATE THAT THE PARTY KNOWS OF THE CHANGE.

THE DUTY TO FURNISH THIS INFORMATION TO EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY CONTINUES AS LONG AS ANY PERSON, BY VIRTUE OF THIS ORDER, IS UNDER AN OBLIGATION TO PAY CHILD SUPPORT OR ENTITLED TO POSSESSION OF OR ACCESS TO A CHILD.

FAILURE BY A PARTY TO OBEY THE ORDER OF THIS COURT TO PROVIDE EACH OTHER PARTY, THE COURT, AND THE STATE CASE REGISTRY WITH THE CHANGE IN THE REQUIRED INFORMATION MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

Notice shall be given to the other party by delivering a copy of the notice to the party by registered or certified mail, return receipt requested. Notice shall be given to the Court by delivering a copy of the notice either in person to the clerk of this Court or by registered or certified mail addressed to the clerk at 1201 Huey Road, Belton, Texas 76513. Notice shall be given to the state case registry by mailing a copy of the notice to State Case Registry, Contract Services Section, MC046S, P.O. Box 12017, Austin, Texas 78711-2017.

NOTICE TO ANY PEACE OFFICER OF THE STATE OF TEXAS: YOU MAY USE REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILD CUSTODY SPECIFIED IN THIS ORDER. A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE, REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILD CUSTODY. ANY PERSON WHO KNOWINGLY PRESENTS FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $10,000.

WARNINGS TO PARTIES: FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILD MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS.

FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY'S NOT RECEIVING CREDIT FOR MAKING THE PAYMENT.

FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY.

*Division of Marital Estate*

The Court finds that the following is a just and right division of the parties' marital estate, having due regard for the rights of each party and the children of the marriage.

<u>Property to Husband</u>

IT IS ORDERED AND DECREED that the husband, TIMOTHY PARRISH, is awarded the following as his sole and separate property, and the wife is divested of all right, title, interest, and claim in and to that property:

H-1.     50% of the proceeds remaining from the sale of the home after the net proceeds have been used to pay the debts owed to USAA and USAA Visa, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents

> Tract Sixteen (16), Triple Seven River Estates, Section Four, a subdivision in Bell County, Texas, according to the map or plat of record in Cabinet A, Slide 297-B, Plat Records of Bell County, Texas.

> 472 Cactus Circle, Killeen, Texas

H-2.     A 50% undivided interest in the following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents:

> LOT SIXTEEN (16), IN BLOCK TWO (2), OF WATERCREST ADDITION, PHASE FOUR, IN THE CITY OF KILLEEN, BELL COUNTY, TEXAS, ACCORDING TO THE PLAT OF RECORD IN CABINET C, SLIDE 24-B, PLAT RECORDS OF BELL COUNTY, TEXAS.

> 3507 Coral Bay Lane, Killeen, Texas

H-3.     All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the husband or subject to his sole control including but not limited to the following: Shed, Pool, Leather Couches, Kitchen Table and Hutch, 2 Big Dressers, 52" Television, Console Television, Joshua's Furniture and Computer, White Dishes, Master Bedroom Dresser, Glasses, 1 Set of Silverware, End Tables, Zachary's Book Case, Office Book Case, Game Cube, Tools, Lawn Equipment.

H-4.     All clothing, jewelry, and other personal effects in the possession of the husband or subject to his sole control.

H-5.     All sums of cash in the possession of the husband or subject to his sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in the husband's sole name or from which the husband has the sole right to withdraw funds or which are subject to the husband's sole control.

H-6.     The sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of the husband's past, present, or future employment.

H-7. The individual retirement accounts, simplified employee pensions, annuities, and variable annuity life insurance benefits in the husband's name.

H-8. All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to or as a result of TIMOTHY PARRISH's service in the United States Army, including any accrued unpaid bonuses, disability plan or benefits, Thrift Savings Plan, or other benefits existing by reason of or as a result of TIMOTHY PARRISH's past, present, or future employment, except that portion of TIMOTHY PARRISH's U.S. military retirement that has been awarded in this decree to TRISHA ANN PARRISH as more particularly specified in the domestic relations order signed coincident with this decree and incorporated verbatim in it by reference.

H-9. The 2005 Honda Civic motor vehicle, vehicle identification number _____, together with all prepaid insurance, keys, and title documents.

Property to Wife

IT IS ORDERED AND DECREED that the wife, TRISHA ANN PARRISH, is awarded the following as her sole and separate property, and the husband is divested of all right, title, interest, and claim in and to that property:

W-1. 50% of the proceeds remaining from the sale of the home after the net proceeds have been used to pay the debts owed to USAA and USAA Visa, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents:

> Tract Sixteen (16), Triple Seven River Estates, Section Four, a subdivision in Bell County, Texas, according to the map or plat of record in Cabinet A, Slide 297-B, Plat Records of Bell County, Texas.

> 472 Cactus Circle, Killeen, Texas

W-2. A 50% undivided interest in the following real property, including but not limited to any escrow funds, prepaid insurance, utility deposits, keys, house plans, home security access and code, garage door opener, warranties and service contracts, and title and closing documents:

> LOT SIXTEEN (16), IN BLOCK TWO (2), OF WATERCREST ADDITION, PHASE FOUR, IN THE CITY OF KILLEEN, BELL COUNTY, TEXAS, ACCORDING TO THE PLAT OF RECORD IN CABINET C, SLIDE 24-B, PLAT RECORDS OF BELL COUNTY, TEXAS.

> 3507 Coral Bay Lane, Killeen, Texas

W-3. All household furniture, furnishings, fixtures, goods, art objects, collectibles, appliances, and equipment in the possession of the wife or subject to her sole control including but not limited to the following: Green Couches, Office Television, Computer Table, File Cabinets, Master Bedroom Furniture, 2 Twin Beds, Green Ivy Dishes, Green Ivy Bakeware, Showman Dishes, White China, Zachary's Dresser, Spare Room Dresser, Baking Stuff, 1 Set of Silverware, Patio Table and Chairs, Computer Chair, Gray Lawn Mower, Electric Weed Eater, Book Cases, XBOX.

W-4. All clothing, jewelry, and other personal effects in the possession of the wife or subject to her sole control.

W-5.    All sums of cash in the possession of the wife or subject to her sole control, including funds on deposit, together with accrued but unpaid interest, in banks, savings institutions, or other financial institutions, which accounts stand in the wife's sole name or from which the wife has the sole right to withdraw funds or which are subject to the wife's sole control.

W-6.    The sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to any profit-sharing plan, retirement plan, Keogh plan, pension plan, employee stock option plan, 401(k) plan, employee savings plan, accrued unpaid bonuses, disability plan, or other benefits existing by reason of the wife's past, present, or future employment.

W-7.    The individual retirement accounts, simplified employee pensions, annuities, and variable annuity life insurance benefits in the wife's name.

W-8.    All sums, whether matured or unmatured, accrued or unaccrued, vested or otherwise, together with all increases thereof, the proceeds therefrom, and any other rights related to or as a result of TIMOTHY PARRISH's service in the United States Army, including any accrued unpaid bonuses, disability plan or benefits, Thrift Savings Plan, or other benefits existing by reason of or as a result of TIMOTHY PARRISH's past, present, or future employment, except that portion of TIMOTHY PARRISH's U.S. military retirement that has been awarded in this decree to TIMOTHY PARRISH as more particularly specified in the domestic relations order signed coincident with this decree and incorporated verbatim in it by reference.

W-9.    The 2003 Chrysler Sebring motor vehicle, vehicle identification number _____, together with all prepaid insurance, keys, and title documents.

Division of Debt

Debts to Husband

IT IS ORDERED AND DECREED that the husband, TIMOTHY PARRISH, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the wife and her property harmless from any failure to so discharge, these items:

H-1.    The balance due, including principal, interest, tax, and insurance escrow, on the promissory note executed by TIMOTHY J. PARRISH and TRISHA A. PARRISH, in the original principal sum of $130,000.00, dated April 29, 2003, payable to MERS, and secured by deed of trust on the real property awarded in this decree to the husband and wife, which is recorded at volume ____, page ____, Deed of Trust Records of Bell County, Texas.

H-2.    The balance due, including principal, interest, tax, and insurance escrow, on the promissory note executed by TIMOTHY JAY PARRISH and TRISHA PARRISH, in the original principal sum of $71,400.00, dated January 26, 2004, payable to Amerigroup Mortgage Corporation, and secured by deed of trust on the real property awarded in this decree to the husband and wife, which is recorded at volume ____, page ____, Deed of Trust Records of Bell County, Texas.

H-3.    The balance due, including principal, interest, and all other charges, on the promissory note payable to Honda Finance, and given as part of the purchase price of and secured by a lien on the 2005 Honda Civic motor vehicle awarded to husband.

H-4.    The following debts, charges, liabilities, and obligations:

Debt owed to USAA, Account number 3876
    Balance: $63,918.50

Debt owed to USAA Visa, Account number xxxx
Balance: $5,113.67.

H-5.    Any and all debts, charges, liabilities, and other obligations incurred solely by the husband from and after October 22, 2007 unless express provision is made in this decree to the contrary.

### Debts to Wife

IT IS ORDERED AND DECREED that the wife, TRISHA ANN PARRISH, shall pay, as a part of the division of the estate of the parties, and shall indemnify and hold the husband and his property harmless from any failure to so discharge, these items:

W-1.    The following debts, charges, liabilities, and obligations:

Debt owed to Store Cards, Account number xxxx
Balance: $600.00

W-2.    Any and all debts, charges, liabilities, and other obligations incurred solely by the wife from and after October 22, 2007 unless express provision is made in this decree to the contrary.

### Notice

IT IS ORDERED AND DECREED that each party shall send to the other party, within three days of its receipt, a copy of any correspondence from a creditor or taxing authority concerning any potential liability of the other party.

### Provisions Dealing with Sale of Residence Located at 472 Cactus Drive, Killeen, Texas

IT IS FURTHER ORDERED AND DECREED that the property and all improvements located thereon at tract sixteen, Triple Seven River Estates subdivision, section Four, according to the map, plat, or deed records of Bell County, Texas, and more commonly known as 472 Cactus Circle, Killeen, Bell County, Texas, shall be sold under the following terms and conditions:

1.    The property shall be sold for a price that is mutually agreeable to TIMOTHY PARRISH and TRISHA ANN PARRISH.

2.    TIMOTHY PARRISH shall continue to make all payments of principal, interest, taxes, and insurance on the property during the pendency of the sale, and TIMOTHY PARRISH shall have the exclusive right to enjoy the use and possession of the premises until closing. All maintenance and repairs necessary to keep the property in its present condition shall be paid by TIMOTHY PARRISH.

3.    The net sales proceeds (defined as the gross sales price less cost of sale and full payment of any mortgage indebtedness or liens on the property) shall be distributed as follows: described herein above.

4.    TRISHA ANN PARRISH shall pay to TIMOTHY PARRISH $359.38 per month, with the first payment being due and payable on April 1, 2008 and a like payment being due and payable on the first day of each month thereafter ending the first month following the sale of the home located at 472 Cactus Drive, Killeen, Texas.

**Provisions Dealing with the Residence Located at 3507 Coral Bay Lane, Killeen, Texas**

IT IS FURTHER ORDERED AND DECREED that TIMOTHY PARRISH shall be entitled to receive any and all income derived from the property located at 3507 Coral Bay Lane, Killeen, Texas.

<u>Attorney's Fees</u>

To effect an equitable division of the estate of the parties and as a part of the division, and for services rendered in connection with conservatorship and support of the children, each party shall be responsible for his or her own attorney's fees, expenses, and costs incurred as a result of legal representation in this case.

<u>Treatment/Allocation of Community Income for Year of Divorce</u>

IT IS ORDERED AND DECREED that, for the calendar year 2008, each party shall file an individual income tax return in accordance with the Internal Revenue Code.

IT IS ORDERED AND DECREED that for calendar year 2008, each party shall indemnify and hold the other party and his or her property harmless from any tax liability associated with the reporting party's individual tax return for that year unless the parties have agreed to allocate their tax liability in a manner different from that reflected on their returns.

IT IS ORDERED AND DECREED that each party shall furnish such information to the other party as is requested to prepare federal income tax returns for 2008 within thirty days of receipt of a written request for the information, and in no event shall the available information be exchanged later than March 1, 2009. As requested information becomes available after that date, it shall be provided within ten days of receipt.

IT IS ORDERED AND DECREED that all payments made to the other party in accordance with the allocation provisions for payment of federal income taxes contained in this Final Decree of Divorce are not deemed income to the party receiving those payments but are part of the property division and necessary for a just and right division of the parties' estate.

<u>Dependency Tax Exemption</u>

TIMOTHY PARRISH will have the right to claim the dependency exemption for JOSHUA ROBERT PARRISH, for the purpose of federal income taxes.

TRISHA ANN PARRISH will have the right to claim the dependency exemption for ZACHARY ALLEN PARRISH for purpose of federal income taxes.

<u>Confirmation of Separate Property</u>

IT IS ORDERED AND DECREED that the following described property is confirmed as the separate property of TRISHA ANN PARRISH: Snow Globes and Disney Items.

*Court Costs*

IT IS ORDERED AND DECREED that costs of court are to be borne by the party who incurred them.

*Discharge from Discovery Retention Requirement*

IT IS ORDERED AND DECREED that the parties and their respective attorneys are discharged from the requirement of keeping and storing the documents produced in this case in accordance with rule 191.4(d) of the Texas Rules of Civil Procedure.

*Decree Acknowledgment*

Petitioner, TIMOTHY PARRISH, and Respondent, TRISHA ANN PARRISH, each acknowledge that before signing this Final Decree of Divorce they have read this Final Decree of Divorce fully and completely, have had the opportunity to ask any questions regarding the same, and fully understand that the contents of this Final Decree of Divorce constitute a full and complete resolution of this case. Petitioner and Respondent acknowledge that they have voluntarily affixed their signatures to this Final Decree of Divorce, believing this agreement to be a just and right division of the marital debt and assets, and state that they have not signed by virtue of any coercion, any duress, or any agreement other than those specifically set forth in this Final Decree of Divorce.

*Indemnification*

Each party represents and warrants that he or she has not incurred any outstanding debt, obligation, or other liability on which the other party is or may be liable, other than those described in this decree. Each party agrees and IT IS ORDERED that if any claim, action, or proceeding is hereafter initiated seeking to hold the party not assuming a debt, an obligation, a liability, an act, or an omission of the other party liable for such debt, obligation, liability, act or omission of the other party, that other party will, at his or her sole expense, defend the party not assuming the debt, obligation, liability, act, or omission of the other party against any such claim or demand, whether or not well founded, and will indemnify the party not assuming the debt, obligation, liability, act, or omission of the other party and hold him or her harmless from all damages resulting from the claim or demand.

Damages, as used in this provision, includes any reasonable loss, cost, expense, penalty, and other damage, including without limitation attorney's fees and other costs and expenses reasonably and necessarily incurred in enforcing this indemnity.

IT IS ORDERED that the indemnifying party will reimburse the indemnified party, on demand, for any payment made by the indemnified party at any time after the entry of the divorce decree to satisfy a judgment of any court of competent jurisdiction or in accordance with a bona fide compromise or settlement of claims, demands, or actions for any damages to which this indemnity relates.

The parties agree and IT IS ORDERED that each party will give the other party prompt written notice of any litigation threatened or instituted against either party that might constitute the basis of a claim for indemnity under this decree.

*Clarifying Orders*

Without affecting the finality of this Final Decree of Divorce, this Court expressly reserves the right to make orders necessary to clarify and enforce this decree.

*Relief Not Granted*

IT IS ORDERED AND DECREED that all relief requested in this case and not expressly granted is denied. This is a final judgment, for which let execution and all writs and processes necessary to enforce this judgment issue. This judgment finally disposes of all claims and all parties and is appealable.

*Date of Judgment*

SIGNED on _____**APR 3 0 2008**_____.

**Original Signed by Judge Fancy H. Jezek**

JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

Corbin & Associates, P.C., Attorneys
603 North Eighth Street
Killeen, Texas 76541
Tel: (254) 526-4523
Fax: (254) 526-6711

By:_____
DANIEL A. CORBIN
Attorney for Petitioner
State Bar No. 04814300

APPROVED AND CONSENTED TO AS TO BOTH FORM AND SUBSTANCE:

_____
TIMOTHY PARRISH
Petitioner

_____
TRISHA ANN PARRISH
Respondent

NO. 226,429-B

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | |
| | § | |
| TIMOTHY PARRISH | § | |
| AND | § | 146TH JUDICIAL DISTRICT |
| TRISHA ANN PARRISH | § | |
| | § | |
| AND IN THE INTEREST OF | § | |
| JOSHUA ROBERT PARRISH AND | § | |
| ZACHARY ALLEN PARRISH, | § | |
| CHILDREN | § | BELL COUNTY, TEXAS |

◇ COPY

FILED 2008 APR 30 AM 9:09 SHELIA NORMAN DISTRICT COURT BELL COUNTY TX BY _____ DEPUTY

## DOMESTIC RELATIONS ORDER

The Court, having entered a judgment of dissolution of marriage in this case on

_April 30_, 2008, , and finding that the entry of a domestic relations order is appropriate, makes the following findings and conclusions of law and enters them as an order in this proceeding.

*Findings*

The Court finds, in accordance with the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. section 1408, as follows:

1. This Court has jurisdiction over TIMOTHY PARRISH. The residence of TIMOTHY PARRISH is in Killeen, Bell County, Texas, other than because of military assignment.

2. Petitioner, TIMOTHY PARRISH, and Respondent, TRISHA ANN PARRISH, were originally married in October 3, 1994, and were divorced on _____, 2008. That marriage lasted for 13 years and 4 months during which time TIMOTHY PARRISH served 13 years and 4 months or more of creditable service toward retirement.

3. TIMOTHY PARRISH's Social Security number is 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, his address is 472 Cactus Circle, Kileen, TX 76542, and his birth date is December 30, 1964.

4. TRISHA ANN PARRISH's Social Security number is 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 and her address is 689 Deer Run Road, Killeen, Texas 76549, and her birth date is April 25, 1972.

5. The rights of TIMOTHY PARRISH under the Servicemembers Civil Relief Act were fully complied with in this case.





EXHIBIT
B
ALL STATE LEGAL

6. TIMOTHY PARRISH is not retired from the United States United States Army at the time of this order.

7. The award of disposable retired pay made to TRISHA ANN PARRISH in this order is made in compliance with the Uniformed Services Former Spouses' Protection Act.

8. It is intended by this Court and the parties that the Defense Finance and Accounting Service (DFAS) designee make the payments due to TRISHA ANN PARRISH of her interest in the disposable retired pay awarded in this order directly to TRISHA ANN PARRISH.

*Award to Nonmember Spouse*

IT IS THEREFORE ORDERED that TRISHA ANN PARRISH have judgment against and recover from TIMOTHY PARRISH from the military retirement benefits of which resulted from his service in the United States Armed Forces, according to the fraction calculated by the formula below. On the date of divorce, TIMOTHY PARRISH had achieved the grade of CW3 and had served 13 years and 4 months. The high average pay over the last 36 months of the marriage was $5382.10. The number of months of marriage is one hundred sixty (160).

The formula is : Fifty per cent(50%) multiplied by the number of months married divided by the total number of months served by TIMOTHY PARRISH. This fraction is further multiplied by the disposable military retired pay to which is TIMOTHY PARRISH entitled at retirement, the result being the share that TRISHA ANN PARRISH, the Non-Member spouse, is entitled to received, IF, AS and WHEN TIMOTHY PARRISH receives retired pay or:

50% X  Number of months married  X Disposable military retired pay=Non-Member's share
        Total number of months served

IT IS FURTHER ORDERED that DFAS thereafter pay TRISHA ANN PARRISH each month, to the extent allowed by law, the calculated percentage of TIMOTHY PARRISH 's disposable military retired pay, together will all cost-of-living adjustments applicable thereto, payable only IF, AS and WHEN received by TIMOTHY PARRISH .

IT IS ORDERED that, if DFAS declines or refuses to pay TRISHA ANN PARRISH each month, TIMOTHY PARRISH is ORDERED to calculate and pay TRISHA ANN

PARRISH's share each month to TRISHA ANN PARRISH at her last known address by check, money order, wire transfer, cash or any other method reasonably calculated to meet the conditions of this Order.

IT IS FURTHER ORDERED that DFAS thereafter pay TRISHA ANN PARRISH each month, to the extent allowed by law, the calculated percentage of TIMOTHY PARRISH's disposable retired pay at retirement, together with all cost-of-living adjustments applicable thereto, payable, IF, AS, and WHEN received by TIMOTHY PARRISH.

*Constructive Trust*

IT IS FURTHER ORDERED that TIMOTHY PARRISH be and is hereby designated a constructive trustee for the benefit of TRISHA ANN PARRISH for the purpose of receiving the retired pay awarded herein to TRISHA ANN PARRISH as TRISHA ANN PARRISH's sole and separate property until the end of the award, and TIMOTHY PARRISH be and is hereby ORDERED, on receipt thereof, to deliver by first-class mail to TRISHA ANN PARRISH at her last known address by negotiable instrument that portion of each monthly retired pay payments awarded to TRISHA ANN PARRISH herein not paid directly (or by allotment) by DFAS within three days of the receipt of any such payments by TIMOTHY PARRISH. All payments made directly to TRISHA ANN PARRISH by DFAS shall be a credit against this obligation.

For purposes of this order, TIMOTHY PARRISH is specifically directed, on penalty of contempt, to payinterest in the disposable retired pay as ordered in this order, AND IT IS SO TRISHA ANN PARRISH's ORDERED. TIMOTHY PARRISH is specifically directed that he is not relieved of that obligation except to the extent that he is specifically notified that 100 percent of TRISHA ANN PARRISH's interest in the retirement benefit has been directly paid by DFAS, and IT IS SO ORDERED.

IT IS FURTHER ORDERED that any election of benefits that may hereafter be made by TIMOTHY PARRISH shall not reduce the amount equal to the percentage of the disposable retired pay or of the disposable retired pay the Court has herein awarded to TRISHA ANN PARRISH , except as provided by law. In this regard, IT IS FURTHER ORDERED that TIMOTHY PARRISH shall not merge his military retired pay with any other pension and shall not pursue any course of action that would defeat, reduce, or limit TRISHA ANN PARRISH 's

right to receive TRISHA ANN PARRISH 's full share of TIMOTHY PARRISH's retired pay as awarded in this order, unless otherwise ordered herein.

*End of Award*

IT IS ORDERED that the payment of the disposable retirement pay awarded in this order to TRISHA ANN PARRISH shall continue for 13 years and 4 months after it begins or until the death of TIMOTHY PARRISH or TRISHA ANN PARRISH, whichever event occurs first.

*Retiree Account Statements and Privacy Waiver*

IT IS ORDERED that, since TRISHA ANN PARRISH is entitled to a percentage interest in any cost-of-living or other increase in the United States Armed Forces disposable retired pay, TIMOTHY PARRISH shall send to TRISHA ANN PARRISH at her last known address a copy of each retired pay voucher (Retiree Account Statement) that he receives in the future within five days of his receipt of it.

*Retirement*

IT IS ORDERED that TIMOTHY PARRISH shall notify TRISHA ANN PARRISH of his application for retired pay, and provide TRISHA ANN PARRISH with a true copy of his Application for Retired Pay Benefits, on the date he applies for those benefits. This notification shall be mailed by TIMOTHY PARRISH to at her last known address. TIMOTHY PARRISH is FURTHER ORDERED to provide to TRISHA ANN PARRISH a true and correct copy of the first Retired Annuitant Statement received by him within five days of his receipt of same.

*Survivor Benefit Plan*

The Court further finds that TRISHA ANN PARRISH should be designated as a former spouse beneficiary of TIMOTHY PARRISH's Armed Forces Survivor Benefit Plan and that TRISHA ANN PARRISH 's designation as a former spouse beneficiary should not be modified, amended, withdrawn, reduced, or altered to TRISHA ANN PARRISH 's detriment by TIMOTHY PARRISH during TRISHA ANN PARRISH 's lifetime, and IT IS SO ORDERED.

IT IS THEREFORE ORDERED that TIMOTHY PARRISH shall immediately designate TRISHA ANN PARRISH his former spouse beneficiary under the Armed Forces Survivor Benefit Plan as his former spouse.

IT IS THEREFORE ORDERED that TRISHA ANN PARRISH be and is hereby

designated as a former spouse beneficiary under TIMOTHY PARRISH's Armed Forces Survivor Benefit Plan.

IT IS ORDERED that TIMOTHY PARRISH shall immediately obtain, fully complete, sign, and return to the entity required to effect the Armed Forces Survivor Benefit Plan election all documents, papers, and forms necessary to provide the Armed Forces Survivor Benefit Plan benefits to TRISHA ANN PARRISH as TIMOTHY PARRISH's former spouse and shall immediately provide TRISHA ANN PARRISH copies of those documents, papers, and forms.

IT IS ORDERED that TIMOTHY PARRISH shall not during TRISHA ANN PARRISH's lifetime modify, amend, withdraw, or in any other manner alter the election to name TRISHA ANN PARRISH as a former spouse beneficiary of TIMOTHY PARRISH's Armed Forces Survivor Benefit Plan.

*Continued Jurisdiction and Clarification*

Without affecting the finality of the Final Decree of Divorce or this Domestic Relations Order, this Court expressly reserves the right pursuant to section 9.101 *et seq.* of the Texas Family Code to make orders necessary to clarify, amend, and enforce this order, and IT IS SO ORDERED.

SIGNED on    **APR 3 0 2008**

_____
Original Signed by Judge Fancy M. Jezek
JUDGE PRESIDING

AGREED TO IN FORM AND SUBSTANCE

_____
TIMOTHY PARRISH

_____
TRISHA ANN PARRISH

SIGNED BEFORE ME THIS _21_ day of _March_, 2008.

_____, Notary Public
( Timothy Parrish Trisha Parrish Only )

EDWARD K. MOUCHA
MY COMMISSION EXPIRES
September 21, 2010

Domestic Relations Order - Military Retirement
Timothy Parrish v. Trisha Ann Parrish

5

| | | |
|---|---|---|
| IN THE MATTER OF | § | IN THE DISTRICT COURT |
| THE MARRIAGE OF | § | 146TH JUDICIAL DISTRICT |
| TIMOTHY PARRISH AND TRISHA ANN PARRISH | § | |
| AND IN THE INTEREST OF JOSHUA ROBERT PARRISH AND ZACHARY ALLEN PARRISH, CHILDREN | | BELL COUNTY, TEXAS |

## MEMORANDUM OF RULING

On May 06, 2014, Petitioner appeared with attorney, Ashley Clapper. Respondent appeared with attorney, Brett Pritchard. A hearing was held on Petitioner's Motion for Clarification and Respondent's Petition for Enforcement.

The court finds that the terms of the Final Decree of Divorce and the Domestic Relations Order in this case, both entered on April 30, 2008, are vague and ambiguous and are therefore subject to clarification. The orders should be revised to reflect that Timothy Parrish, Petitioner, served two hundred ninety one (291) months in the military, the parties were married one hundred sixty (160) of those months, the applicable disposable military pay is $5,382.10, and that payments to Trisha Parrish, Respondent, shall continue until the death of either of the parties.

Trisha Parrish's Petition for Enforcement is GRANTED. Timothy Parrish is ordered to pay Trisha Parrish any amounts she has not received to date based upon the calculation of benefits described in the preceding paragraph and to take such action as may be necessary to implement the provisions of this ruling.

Trisha Parrish's request that Timothy Parrish be held in contempt of court is DENIED.



EXHIBIT

C

14·0203·MO

Each party shall pay its own attorney's fees and costs of court incurred by them.

Mr. Pritchard shall prepare orders which may be appropriate to inplement the provisions of this ruling.

SIGNED THIS ___22nd___ DAY OF ___May___, 2014.

_____
JUDGE PRESIDING



ORIGINAL

NO. 226,429-B

2014 NOV 12 AH 10: 02

SHEILA NORMAN, DISTRICT CLERK
BELL COUNTY, TX

IN THE MATTER OF
THE MARRIAGE OF

TIMOTHY PARRISH
AND
TRISHA ANN PARRISH

§ IN THE DISTRICT COURT

§

§ 146TH JUDICIAL DISTRICT

§

§ BELL COUNTY, TEXAS

## DOMESTIC RELATIONS ORDER

The Court, having entered a decree of divorce coincident with the signing of this domestic relations order, finding that the entry of a domestic relations order (DRO) is necessary to effectuate the terms of that decree of divorce, and further finding that the entry of a DRO is appropriate, makes the following findings and conclusions of law and enters them as an order in this proceeding.

*Findings*

The Court finds, in accordance with the Uniformed Services Former Spouses' Protection Act, 10 U.S.C. section 1408, as follows:

1. This Court has jurisdiction over TIMOTHY PARRISH. The residence of Service Member is in Killeen, Bell County, Texas, other than because of military assignment.

2. Service Member, and TRISHA ANN PARRISH, ("Former Spouse"), were originally married on October 3, 1994, and that marriage lasted for 13 years and 4 months, during which time Service Member served 13 years and 4 month or more of creditable service toward retirement.

3. Service Member's Social Security number is 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, his address is 585 CR 4745, Kempner, Texas, and his birth date is December 30, 1964.

4. Former Spouse's Social Security number is 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, her address is *17355 Moody Leon RD. Moody, TX 76557*, and her birth date is April 25, 1972.

5. The rights of Service Member under the Servicemembers Civil Relief Act were fully complied with in this case.

6. Service Member is not retired from the United States United States Army at the time of this order.

7. The award of disposable retired pay made to Former Spouse in this order is made in compliance with the Uniformed Services Former Spouses' Protection Act.

8. It is intended by this Court and the parties that the Defense Finance and Accounting Service (DFAS) designee make the payments due to Former Spouse of her interest in the disposable retired pay awarded in this order directly to Former Spouse.

EXHIBIT

D

*Award to Former Spouse*

IT IS THEREFORE ORDERED that the Former Spouse is awarded *27.59* percent of the disposable military retired pay the member would have received had the member retired at the paygrade of CW4 with a retired pay base of $5,382.10 and with 24 years and 3 months of creditable service IT IS FURTHER ORDERED that DFAS thereafter pay TRISHA ANN PARRISH each month, to the extent allowed by law, the calculated percentage of TIMOTHY PARRISH's disposable retired pay at retirement, together with all cost-of-living adjustments applicable thereto, payable, IF, AS, and WHEN received by TIMOTHY PARRISH.

IT IS FURTHER ORDERED that the rest, residue, and remainder of the military retired pay of Servicemember is the sole and separate property of Servicemember.

*Amounts in Excess of 50 Percent*

IT IS ORDERED that if the dollar amount or award (or a larger sum as increases take effect) exceeds 50 percent of the disposable retired pay, DFAS shall pay to Former Spouse the maximum amount allowable under the Uniformed Services Former Spouses' Protection Act and Service Member shall be responsible for paying the balance of the award each month to Former Spouse, and it is accordingly ORDERED.

*Constructive Trust*

IT IS FURTHER ORDERED that Service Member be and is hereby designated a constructive trustee for the benefit of Former Spouse for the purpose of receiving the retired pay awarded herein to Former Spouse as Former Spouse's sole and separate property, and Service Member be and is hereby ORDERED, on receipt thereof, to deliver by first-class mail to Former Spouse at her last known address by negotiable instrument that portion of each monthly retired pay payments awarded to Former Spouse herein not paid directly (or by allotment) by DFAS within three days of the receipt of any such payments by Service Member. All payments made directly to Former Spouse by DFAS shall be a credit against this obligation.

For purposes of this order, Service Member is specifically directed, on penalty of contempt, to pay Former Spouse's interest in the disposable retired pay as ordered in this order, AND IT IS SO ORDERED. Service Member is specifically directed that he is not relieved of that obligation except to the extent that he is specifically notified that 100 percent of Former Spouse's interest in the retirement benefit has been directly paid by DFAS, and IT IS SO ORDERED.

IT IS FURTHER ORDERED that any election of benefits that may hereafter be made by Service Member shall not reduce the amount equal to the percentage of the disposable retired pay or of the disposable retired pay the Court has herein awarded to Former Spouse, except as provided by federal law *and* prohibited from being changed by a state court order. In this regard, IT IS FURTHER ORDERED that Service Member shall not merge his military retired pay with any other pension and shall not pursue any course of action that would defeat, reduce, or limit Former Spouse's right to receive Former Spouse's full separate-property share of Service Member's retired pay as awarded in this order, unless otherwise ordered herein.

*Retiree Account Statements and Privacy Waiver*

IT IS FURTHER ORDERED that Service Member shall deliver by first class mail to Former Spouse at *17353 Meadow Lern Rd. Manor, TX 78557*, or such other address as Former Spouse may hereafter specify in writing, a true and correct legible copy of each Retiree Account Statement received by Service Member from DFAS within five day of its receipt.

*Retirement*

IT IS ORDERED that Service Member shall notify Former Spouse of his application for retired pay, and provide Former Spouse with a true copy of his Application for Retired Pay Benefits, on the date he applies for those benefits. This notification shall be mailed by Service Member to Former Spouse at her last known address. Service Member is FURTHER ORDERED to provide to Former Spouse a true and correct copy of the first Retiree Account Statement received by him within five days of its receipt.

*Application for Direct Pay of Retired Pay*

Former Spouse is hereby directed to apply for Former Spouse's entitlement to a portion of Service Member's retired pay by contacting the DFAS Legal Department, completing the Application for Former Spouse Payments from Retired Pay (DD Form 2293), and delivering it along with a certified copy of this DRO (certified within ninety days of its delivery to DFAS) and a photocopy of the parties' marriage certificate to: **DFAS-CL, Garnishment Operations (Code LL), P.O. Box 998002, Cleveland, Ohio 44199-8002** by certified mail, return receipt requested.

*Taxes*

IT IS FURTHER ORDERED that Former Spouse shall include in her gross income for her taxable years of receipt all retired pay received by Former Spouse pursuant to this order, and, to the extent benefits are payable to Former Spouse by DFAS, Service Member shall not include such benefits in Service Member's gross income for such taxable years.

*Continued Jurisdiction and Clarification*

Although the Court and the parties intend that DFAS make direct payments to Former Spouse of Former Spouse's interest in the disposable retired pay awarded herein, IT IS FURTHER ORDERED that, if this order does not qualify for direct payment, Service Member shall cooperate and do all things necessary to aid Former Spouse in obtaining a clarification of this order that will qualify for direct payment of Former Spouse's interest in the disposable retired pay awarded in this order. IT IS FURTHER ORDERED that this Court reserves jurisdiction to enter such a clarifying order.

Without affecting the finality of the Final Decree of Divorce or this Domestic Relations Order, this Court expressly reserves the right pursuant to section 9.101 *et seq.* of the Texas Family Code to make orders necessary to clarify, amend, and enforce this order, and IT IS SO ORDERED.

SIGNED on ___November 12, 2014___.

_____
JUDGE PRESIDING

Domestic Relations Order - Military Retirement
PARRISH, TIMOTHY 11-1187-FM AC

CERTIFIED COPY
DOCUMENT ATTACHED IS A
TRUE & CORRECT COPY
OF THE ORIGINAL ON FILE

4

NOV 12 2014



SHELIA F. NORMAN
DISTRICT CLERK, BELL CO., TX
BY _____ DEPUTY